[No. 3820–II. Division Two. July 7, 1980.]

WALTER B. SIMPSON, ET AL, *Appellants,* v. THE
STATE OF WASHINGTON, *Respondent.*

*George W. Steers,* for appellants.

*Slade Gorton, Attorney General,* and *Karen Elledge, Assistant,* for respondent.

PEARSON, J.—Plaintiffs Walter Simpson and Robert Greer appeal from an order granting summary judgment to the State of Washington Department of Revenue following plaintiffs' suit for a refund of use taxes paid. Two issues are raised on appeal: first, whether the trial court correctly determined that a use tax exemption for articles acquired in another "state" applies only to states of the United States; and second, whether a use tax exemption applicable only to states of the United States is unconstitutional as a burden on foreign commerce and a denial of equal protection. We reverse.

Plaintiffs are Canadian citizens currently residing in Bellevue, Washington. Simpson moved to Washington in July of 1976; Greer moved to Washington in December of 1977. Prior to their arrival they were bona fide residents of Ontario, Canada; since that time they have been bona fide residents of this state.

Both plaintiffs purchased cars while residents of Ontario and paid sales taxes on them. Following their transfer to the state of Washington, plaintiffs attempted to register their cars in this state. As a prerequisite, they were forced to pay a use tax pursuant to RCW 82.12.020, which imposes such tax upon "every person . . . for the privilege of using within this state as a consumer any article of tangible personal property purchased at retail . . ." Greer paid the tax under protest; Simpson made a timely application for refund of the tax. Both plaintiffs claimed that they should be exempt from the tax under RCW 82.12.030(1), which provides:

> The [use tax] . . . shall not apply:
> In respect to the use of . . . private automobiles by a bona fide resident of this state, if such articles were acquired and used by such person in *another state* while a bona fide resident thereof . . .

(Italics ours.) Plaintiffs assert first that the word "state" should be construed as including foreign states and provinces such as Ontario. We disagree. The primary object in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Janovich v. Herron,* 91 Wn.2d 767, 592 P.2d 1096 (1979). While statutory exceptions from taxing laws are construed narrowly, all words and provisions of the applicable statute and the act as a whole will be harmonized so as to ascertain the legislative intent. *International Paper Co. v. Department of Revenue,* 92 Wn.2d 277, 595 P.2d 1310 (1979). The word "state" appears in several sections of RCW 82.12. RCW 82.12.035 provides:

> A credit shall be allowed against the taxes imposed by this chapter upon the use of tangible personal property in *this state* in the amount that the present user thereof or his bailor or donor has paid a retail sales or use tax with respect to such property to *any other state, political subdivision thereof,* or the District of Columbia, prior to the use of such property in *this state.*

(Italics ours.) The express mention of one thing in a statute excludes others not mentioned. *Dominick v. Christensen,* 87 Wn.2d 25, 548 P.2d 541 (1976); *Swanson v. White,* 83 Wn.2d 175, 517 P.2d 959 (1973). Words in a statute will be given their ordinary meaning, absent a statutory definition. *Garrison v. State Nursing Bd.,* 87 Wn.2d 195, 550 P.2d 7 (1976). The express mention of states and the District of Columbia, which is a federal district within the United States, combined with the commonly understood meaning of the word "state," indicates that foreign countries are not included. In addition, RCW 82.12.030 itself provides that

> The provisions of this chapter shall not apply:
>
> . . .
>
> (4) In respect to the use of any airplane, locomotive, railroad car, or watercraft used primarily in conducting interstate or foreign commerce . . .

If the legislature had intended the word "state" to mean both American states and the governmental units of foreign countries, it would have been unnecessary to refer to foreign commerce in the foregoing subsection. Statutes should

be construed, whenever possible, so that no portion is superfluous. *Sim v. State Parks & Recreation Comm'n,* 90 Wn.2d 378, 583 P.2d 1193 (1978). Hence "state" refers only to American states.

Plaintiffs asserted in their motion for summary judgment that if the exemption statute is not construed as applicable to Canadian "states," it is unconstitutional as a denial of equal protection and a burden on foreign commerce. But the trial court refused to reach this issue in rendering summary judgment for defendants because the relief for which plaintiffs prayed was a refund of use taxes paid. The court stated:

> It is quite clear if the Court were to reach the constitutional questions today in the context of this case, find them to be unconstitutional, and render a decision on that subject, it would be an advisory opinion because it would have nothing whatsoever to do with the request for relief prayed for in the complaint.

█ It is true that if the exemption statute were held unconstitutional, the use tax statute would remain unchallenged and future use taxpayers would simply have no exemption to claim. But plaintiffs clearly raised the issue of constitutionality in their pleadings. We do not think plaintiffs should be denied a hearing on that issue merely because the pleadings were in the form of a refund request. Pleadings are to be construed liberally; if a complaint states facts entitling the plaintiff to some relief it is immaterial by what name the action is called. *See, e.g., Christensen v. Swedish Hosp.,* 59 Wn.2d 545, 368 P.2d 897 (1962). We may affirm or reverse the summary judgment of the trial court based on our own resolution of the constitutional issues. *See Sarruf v. Miller,* 90 Wn.2d 880, 586 P.2d 466 (1978).

█ Plaintiffs assert that limiting the exemption to articles purchased in other American states places an undue burden on foreign commerce. The regulation of foreign commerce is exclusively a federal power. *Board of Trustees v. United States,* 289 U.S. 48, 77 L. Ed. 1025, 53 S. Ct. 509

(1933). The cases are extremely broad in defining what constitutes "foreign commerce." *See, e.g., Lord v. Steamship Co.*, 102 U.S. 541, 26 L. Ed. 224 (1881), extending "foreign commerce" not only to trade with foreign nations, but to shipments on the high seas where the ports of embarkation and destination are within the United States. But the use tax is not a violation of the commerce clause as applied to chattels purchased in another state and used in the taxing state thereafter under *Henneford v. Silas Mason Co.*, 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937). The reasoning of *Henneford* is equally applicable in the context of foreign commerce.

> The tax upon the use after the property is at rest is not so measured or conditioned as to hamper the transactions of interstate commerce or discriminate against them.
>
> . . .
>
> . . . A tariff, whether protective or for revenue, burdens the very act of importation, and if laid by a state upon its commerce with another is equally unlawful whether protection or revenue is the motive back of it. But a tax upon use, or, what is equivalent for present purposes, a tax upon property after importation is over, is not a clog upon the process of importation at all, any more than a tax upon the income or profits of a business.

*Henneford v. Silas Mason Co.*, 300 U.S. at 583, 586, 81 L. Ed. at 819, 821.

■■ We next address plaintiffs' assertion that limiting the exemption to articles purchased in other American states denies equal protection of the law to Washington residents who happen to purchase the same articles in a foreign country. Under the Washington State Constitution, article 1, section 12, "No law shall be passed granting to any citizen, . . . privileges or immunities which upon the same terms shall not equally belong to all citizens . . ." The equal protection clause applies to resident aliens as well as citizens. *Herriott v. Seattle*, 81 Wn.2d 48, 500 P.2d 101 (1972); *Hsieh v. Civil Serv. Comm'n*, 79 Wn.2d 529, 488 P.2d 515 (1971). It has been held that equal protection of

the law is provided if a rational relationship exists between the legislative classification and a legitimate state interest, except where a statutory classification is constitutionally suspect or results in the denial of a fundamental constitutional right necessitating strict scrutiny. *Childers v. Childers*, 89 Wn.2d 592, 575 P.2d 201 (1978). Plaintiffs do not claim that the exemption statute contains a "suspect" classification, as that term has been defined,[1] or that the right to make foreign purchases without domestic taxation is "fundamental." Hence we examine with minimal scrutiny the exemption benefiting residents who purchase goods in another state and discriminating against residents who purchase goods in a foreign country. *See Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 601 P.2d 936 (1979). *Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs* outlined a 3–step analysis for measuring the constitutionality of a legislative classification with minimal scrutiny, keeping in mind that the legislature has a wide range of discretion in making its classifications and that such enactments are presumptively valid. *O'Connell v. Conte*, 76 Wn.2d 280, 456 P.2d 317 (1969).

First, does the classification apply alike to all members within the designated class? . . . The answer is usually yes. . . . However, an affirmative answer to this narrow question does not itself mean that the challenged legislative classification will survive minimal scrutiny.

Second, does some basis in reality exist for reasonably distinguishing between those within and without the designated class? More specifically, do reasonable grounds exist to support the classification's distinction between those within and without the class? *Crane Towing, Inc. v. Gorton*, 89 Wn.2d 161, 174, 570 P.2d 428 (1977); *Clark v. Dwyer*, 56 Wn.2d 425, 435, 353 P.2d 941 (1960), *cert, denied*, 364 U.S. 932, 5 L. Ed. 2d 365, 81 S. Ct. 379 (1961). . . . The burden is on the challenger to prove that the classification does not rest on a reasonable basis. *Haddenham v. State*, 87 Wn.2d 145, 150, 550 P.2d 9 (1976).

---

[1]*Darrin v. Gould*, 85 Wn.2d 859, 540 P.2d 882 (1975).

Third, does the challenged classification have any rational relation to the purposes of the challenged statute? *Washington v. Confederated Bands & Tribes of the Yakima Indian Nation,* 439 U.S. 463, 501, 58 L. Ed. 2d 740, 99 S. Ct. 740, 762 (1979). More specifically, does the difference in treatment between those within and without the designated class serve the purposes intended by the legislation? *Salstrom's Vehicles, Inc. v. Department of Motor Vehicles,* 87 Wn.2d 686, 694, 555 P.2d 1361 (1976); *Sonitrol Northwest, Inc. v. Seattle,* 84 Wn.2d 588, 589–90, 528 P.2d 474 (1974); *see* 3 B. Schwartz, *A Commentary on the Constitution of the United States,* 500–04 (1968); *Developments in Law—Equal Protection,* 82 Harv. L. Rev. 1065, 1082–87 (1969). The challenger must do more than merely question the wisdom and expediency of the statute. *Brewer v. Copeland,* 86 Wn.2d 58, 61, 542 P.2d 445 (1975). The challenger must show conclusively that the classification is contrary to the legislation's purposes. *State v. Kent,* 87 Wn.2d 103, 110, 549 P.2d 721 (1976). Moreover, it must be remembered that equal protection does not require a state to attack every aspect of a problem. Rather, the legislature is free to approach a problem piecemeal and learn from experience. *State v. Kent, supra* at 111.

(Citations omitted.) *Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs, supra* at 835–36.

 Addressing the first inquiry, plaintiffs in the present case do not claim that the classification exempting those who purchase goods in another American state applies differently to members of the designated class. Plaintiffs' arguments relate to the second and third inquiries set forth above. They assert that reasonable grounds do not exist for distinguishing between those within and without the designated class, and that the classification has no rational relationship to the purpose of the exemption statute. We think that reasonable grounds arguably exist for distinguishing between those who purchase goods in another American state and those who purchase goods in a foreign country, in that a policy benefiting the economies of other states may indirectly benefit all American states, including Washington, under our federal system. But the

classification does not appear to have any rational relationship to the purpose of the exemption statute.

Construing the use tax chapter as a whole, we are persuaded that the purpose of the exemption provision, like the purpose of the credit provision, is to equalize the tax burden among Washington residents.

> Equality is the theme that runs through all the sections of the statute. There shall be a tax upon the use, but subject to an offset if another use or sales tax has been paid for the same thing. This is true where the offsetting tax became payable to Washington by reason of purchase or use within the state. It is true in exactly the same measure where the offsetting tax has been paid to another state by reason of use or purchase there. No one who uses property in Washington after buying it at retail is to be exempt from a tax upon the privilege of enjoyment except to the extent that he has paid a use or sales tax somewhere. Every one who has paid a use or sales tax anywhere, or, more accurately, *in any state,*[2] is to that extent to be exempt from the payment of another tax in Washington.

(Italics ours.) *Henneford v. Silas Mason Co.,* 300 U.S. at 583–84, 81 L. Ed. at 819. We fail to see a rational relationship between the classification discriminating against residents who purchase in a foreign country and the enunciated legislative purpose of equalizing the use tax burden for all residents. Such discrimination is contrary to the purpose of the statute, thus appearing to be the product of a legislative oversight.

We are left with the question of how to cure the constitutional defect in RCW 82.12.030(1). Usually the courts should not supply omissions resulting from legislative oversight. *Knowles v. Holly,* 82 Wn.2d 694, 513 P.2d 18 (1973).

However, if we strike down RCW 82.12.030(1) and hold that provision severable from the other parts of the taxing law, the exemption would be denied to all bona fide

---

[2]The court in *Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937), was specifically concerned with an interstate taxation problem; items purchased in a foreign country were not involved.

Washington residents, and the legislative purpose thereby defeated. Such a holding would also work an injustice to the plaintiffs by denying them the benefits of the exemption which other bona fide Washington residents have received in the past. *See Seattle v. Grundy*, 86 Wn.2d 49, 541 P.2d 994 (1975).

In summary, the consequence of strict adherence to *Knowles* and *Grundy* would afford no remedy for these plaintiffs from the unconstitutional discrimination they suffered, nor would the legislature's overall purpose be realized.

Under similar circumstances, the United States Supreme Court in *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 64 L. Ed. 2d 107, 100 S. Ct. 1540 (1980), allowed the Missouri courts the option of extending the benefits of a state statute to the victims of the discrimination as one means of curing the constitutional defect. In that case, a Missouri statute allowed certain death benefits to women whose husbands died in work–related accidents. Such benefits were denied to a husband unless he was mentally or physically incapacitated from wage earning or could prove actual dependence on his wife's earnings. The court stated at pages 152–53:

> Thus we conclude that the Supreme Court of Missouri erred in upholding the constitutional validity of § 287.240. We are left with the question whether the defect should be cured by extending the presumption of dependence to widowers or by eliminating it for widows. *Because state legislation is at issue, and because a remedial outcome consonant with the state legislature's overall purpose is preferable, we believe that state judges are better positioned to choose an appropriate method of remedying the constitutional violation.*

(Italics ours.) In this case, the remedy most consonant with the legislative purpose of RCW 82.12.030(1) is to extend the exemption of that statute to plaintiffs. We do this under the authority of *Wengler v. Druggists Mut. Ins. Co.*, *supra*.

Reversed and remanded.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied August 14, 1980.

Review denied by Supreme Court November 7, 1980.