[No. 56348-9. En Banc. March 1, 1990.]

AMERICAN NATIONAL CAN CORPORATION, ET AL, *Appellants,* v. THE DEPARTMENT OF REVENUE, ET AL, *Respondents.*

---

238

*Bogle & Gates, John T. Piper, D. Michael Young,* and *James R. Johnston,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *William B. Collins, Assistant,* for respondents.

UTTER, J.—On June 23, 1987, the United States Supreme Court partially invalidated Washington's business and occupation tax (hereinafter B&O tax). *See Tyler Pipe Indus., Inc. v. Department of Rev.*, 483 U.S. 232, 253, 97 L. Ed. 2d 199, 107 S. Ct. 2810 (1987). The Legislature amended the B&O tax statute on August 11, 1987. A group of businesses engaged in interstate commerce asks us to invalidate the newly amended statute. They also seek a refund for taxes paid during the 6 weeks which elapsed between the date of the Supreme Court decision, June 23, 1987, and the date the Legislature amended the statute, August 11, 1987.[1] We refer to this period as the interim period.

We conclude that the new law is constitutional and applies to the interim period. Therefore, the litigants are entitled to the credits provided by this statute, but the litigants are not entitled to a full refund.

I

Washington imposes the B&O tax on the "privilege of engaging in business activities" in the state. RCW 82.04-.220. It collects .44 percent of the gross receipts of wholesalers and retailers earned here and .44 percent of the value of products manufactured or extracted here. *See* RCW 82.04.220–.250; RCW 82.04.270.

The B&O tax statute contained a "multiple activities exemption" prior to August 1987. *See* RCW 82.04.440 (1986). This provision protected manufacturers who wholesale or retail their products from double taxation by exempting them from the tax on manufacturing. RCW 82.04.440.

We rejected a constitutional challenge to this exemption in *National Can Corp. v. Department of Rev.*, 105 Wn.2d 327, 715 P.2d 128 (1986). The United States Supreme Court reversed this decision in *Tyler Pipe Indus., Inc. v.*

---

[1]Taxpayers also argued that the 3 percent interest rate paid on refunds is unconstitutional. Since we find that they are not entitled to a refund, we do not address this issue.

*Department of Rev., supra.*[2] It found that Washington's law discriminated against interstate commerce. Manufacturers who sold their products out of state had to pay a tax on manufacturing, while in–state manufacturers who sold their goods in state would pay a tax on the sale but not on the manufacture. *See Tyler,* 483 U.S. at 234. The Supreme Court left the issue of remedy open on remand. *Tyler,* 483 U.S. at 253. In *National Can Corp. v. Department of Rev.,* 109 Wn.2d 878, 749 P.2d 1286, *appeal dismissed, cert. denied,* 486 U.S. 1040 (1988), this court denied the taxpayers refunds for payments made prior to June 23, 1987, the date the Supreme Court's decision in *Tyler* took effect.

On August 11, 1987, the Washington Legislature passed the 1987 credit law, designed to remedy the constitutional defects the United States Supreme Court identified in *Tyler.* Laws of 1987, 2d Ex. Sess., ch. 3 (hereinafter 1987 credit law). This law attempts to remedy the problem by replacing the old "multiple activities exemption" with a "2–way credit." 1987 credit law, § 2 (codified at RCW 82.04-.440). The new law gives businesses a credit for gross receipts taxes paid to this or any other state.

The parties stipulated to a set of facts for purposes of this litigation. In response to interrogatories, the Department of Revenue has identified taxes in 58 jurisdictions which qualify for credit under the new law. See Clerk's Papers, at 787–90. Most of these taxes are local government taxes, not state taxes. The list does include three general state taxes, those of Delaware, Hawaii and Indiana.

The record reveals that interstate taxpayers have claimed $1,303,973 worth of credits between June 1987 and October 1988. Clerk's Papers, at 791. The record also shows that taxpayers have paid $2,769,978 in taxes during the 6–week interim period. The trial court ruled on cross motions for

---

[2]It also vacated and remanded this court's decision in the companion case to *National Can, Tyler Pipe Indus., Inc. v. Department of Rev.,* 105 Wn.2d 318, 715 P.2d 123 (1986). The United States Supreme Court's decision in *Tyler* clearly affirmed this court's ruling with respect to the nexus issues presented in *Tyler,* 105 Wn.2d 318, while overruling its decision in *National Can.*

partial summary judgment on July 21, 1989. It ruled that the 1987 credit law was constitutional. On the other hand, it ruled that taxpayers owed no taxes for the interim period. Cross appeals ensued.

## II

The taxpayers argue that the new tax law discriminates against interstate commerce, violates principles of equal protection, and violates their rights to due process of law. We believe the new law does not discriminate against interstate commerce and that the equal protection and due process arguments have no merit.

Article 1, section 8, clause 3 of the United States Constitution gives Congress the power to regulate interstate commerce. For over a century the United States Supreme Court has inferred limitations on state taxation of interstate commerce from the negative implications of this affirmative grant of power. *See generally* Hellerstein, *State Taxation of Interstate Business: Perspectives on Two Centuries of Constitutional Adjudication,* 41 A.B.A. Tax Law. 37 (1987).

In recent years, the Supreme Court has required that state taxes meet a 4–part test articulated in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977). Under this test, state taxation of interstate business must (1) tax only interstate activities having a sufficient connection to the taxing state (nexus requirement); (2) be fairly apportioned to taxpayer's activities in the state (apportionment requirement); (3) not discriminate against interstate commerce (nondiscrimination requirement); and (4) be fairly related to the services provided by the state.

The taxpayers claim that the law as amended discriminates against interstate commerce, just as its predecessor did. They concede that the new tax meets the other requirements of *Complete Auto Transit.* Brief of Appellants, at 24.

The United States Supreme Court held that the predecessor of the new law discriminated on its face. *See Tyler.* The Court's suggestions to our Legislature on how to remedy the constitutional violation follow from this understanding. The Court wrote:

> Either a repeal of the manufacturing tax or an expansion of the multiple activities exemption to provide out–of–state manufacturers with a credit for manufacturing taxes paid to other States would presumably cure the discrimination. . . .

483 U.S. at 249.

The Legislature chose to provide manufacturers with a credit for manufacturing taxes paid to other states. It also created parallel credits for seller's taxes and extractor's taxes. The credit applies only to gross receipts taxes. 1987 credit law, § 2.

The taxpayers do not challenge the interpretation of the statute or the Department's selection of taxes. If they did, section 1 of the legislation would require this court to construe the statute to avoid constitutional difficulties. *See* 1987 credit law, § 1. Nor do they argue that the Legislature or the Department failed to provide credits for every manufacturing tax. The taxpayers in effect concede that the Legislature did what the Supreme Court said was necessary in *Tyler.*

■ But they object to the fact that by its terms the new law grants no credits for income taxes or excise taxes paid in other states. See Brief of Appellants, at 28–30, 42. This state, however, does not have a corporate income tax. Taxpayers apparently argue that Washington must give them a deduction for taxes which Washington does not exact from local manufacturers. Washington's failure to do this cannot constitute facial discrimination. Facial discrimination must involve giving local businesses a credit not available to interstate businesses.

■ The United States Supreme Court struck down the predecessor tax because it lacked "internal consistency." *Tyler,* at 247; *see generally The "Internal Consistency"*

*Test is Alive and Well: Tyler Pipe Industries, Inc. v. Washington Department of Revenue,* 41 A.B.A. Tax Law. 587 (1987). Internal consistency has little to do with consistency within the statute. Rather, an internally consistent tax is one that would not impermissibly burden free trade if applied by every jurisdiction. *Tyler,* at 247.[3]

If every jurisdiction had a tax like the one Washington had when the Supreme Court decided *Tyler,* all states would discriminate against interstate commerce. The manufacturer–sellers in a state would pay only one tax. A business which manufactured in one state and sold in another would pay taxes on both the value of the manufactured goods and on the sales receipts.

If every jurisdiction in the union had a B&O tax as amended in 1987, no discrimination would occur. Every interstate business could claim a credit for taxes paid in sister states. Neither intrastate nor interstate businesses would pay double tax.

■ The Supreme Court's recent decision in *Goldberg v. Sweet,* 488 U.S. 252, 102 L. Ed. 2d 607, 109 S. Ct. 582 (1989), shows that internal consistency does not require states to grant credits for dissimilar taxes. In that case, the Court upheld a state tax on telecommunications. The Court explained:

> To be internally consistent, a tax must be structured so that if every State were to impose an *identical* tax, no multiple taxation would result. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute. . . .

---

[3]The Supreme Court originally developed the internal consistency test in the apportionment context. *Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 169, 77 L. Ed. 2d 545, 103 S. Ct. 2933 (1983). In *Tyler* and in *Tyler's* predecessor, *Armco Inc. v. Hardesty,* 467 U.S. 638, 81 L. Ed. 2d 540, 104 S. Ct. 2620 (1984), the Court used this test in the context of an inquiry into whether a tax was discriminatory. It did this because the Court thought it discriminatory for a state to not offer interstate businesses a credit for out–of–state taxes which directly parallel taxes for which an intrastate business could claim a credit. Logically, an inquiry into discrimination cannot involve out–of–state taxes having no parallel in Washington.

Appellant Sprint argues that . . . under *Armco [Inc. v. Hardesty,* 467 U.S. 638 (1984)], a court evaluating the internal consistency of a challenged tax must also compare the tax to the similar, but not identical, taxes imposed by other States. Sprint misreads *Armco.* If we were to determine the internal consistency of one State's tax by comparing it with slightly different taxes imposed by other States, the validity of state taxes would turn solely on "the shifting complexities of the tax codes of 49 other States." . . .

(Citations omitted. Italics ours.) *Goldberg,* at 261.

The Supreme Court has never required a state to offer credits for dissimilar taxes. *See Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937) (use tax held nondiscriminatory because credits provided for out–of–state use or sale taxes); *D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 100 L. Ed. 2d 21, 108 S. Ct. 1619, 1623–24 (1988) (holding tax to be fairly apportioned because state allowed credit for similar taxes).

Taxpayers have not expressly argued that Washington failed to give them a credit for similar taxes. They have pointed out that Oregon's excise tax, a tax on corporate income, is also a tax on the privilege of doing business in the state. Brief of Appellants, at 28. They do not argue that this characterization makes it similar to Washington's tax, because a precedent they rely upon heavily, *Complete Auto Transit,* precludes any court from attaching constitutional significance to this particular formal similarity. *See Complete Auto Transit, Inc. v. Brady, supra* at 274 (overruling *Spector Motor Serv. v. O'Connor,* 340 U.S. 602, 95 L. Ed. 573, 71 S. Ct. 508 (1951), which made taxes on the privilege of doing business unconstitutional).

Taxpayers have conceded, as they must, that the new law is internally consistent. Forced to concede that the new law cures the crucial defect identified in *Tyler,* they argue that the Supreme Court's decision in *American Trucking Ass'ns, Inc. v. Scheiner,* 483 U.S. 266, 97 L. Ed. 2d 226, 107 S. Ct. 2829 (1987) supports their position. That case, decided the same day as *Tyler,* invalidated a flat tax imposed on truckers. *Scheiner* does not support their position.

The Supreme Court did not invalidate the flat tax at issue in *Scheiner* because of discrimination against interstate commerce. It invalidated it because it treated out–of–state truckers worse than in–state truckers when both were engaged in interstate commerce. *See Scheiner,* at 281–82. Thus, the whole case has no bearing on many of the taxpayers before this court. Many of these businesses are local businesses which sell out of state.

Secondly, the *Scheiner* court ruled that the flat tax was internally inconsistent. *Scheiner,* at 282–83. It reached this result because the out–of–state truckers paid five times as much per mile as did in–state truckers. *Scheiner,* at 285–86. Taxpayers concede that the new law is internally consistent. Reply Brief of Appellants, at 35.

The *Scheiner* court justified its decision by saying that out–of–state truckers paid the same flat tax for a much less valuable privilege. Taxpayers argue that, under Washington's statute, manufacturers from income tax states get only one privilege, the right to sell, for their B&O tax. Reply Brief of Appellants, at 46–47. Intrastate businesses get the right to sell and manufacture for the same price.

■ This argument rests "on the erroneous assumption that through the B&O tax, Washington is taxing the unitary activity of manufacturing and wholesaling." *Tyler,* 483 U.S. at 251. But *Tyler* teaches that we must view wholesaling "whether by an in–state or an out–of–state manufacturer . . . as a separate activity conducted wholly within Washington that no other State has jurisdiction to tax." *Tyler,* at 251. Hence, a wholesaler pays tax on the gross receipts of sales in state. The fact that no wholesaler will pay Washington tax on manufacturing if he or she manufactures the products sold is irrelevant. *Tyler* requires us to reject taxpayers' argument that a business which sells and manufactures in state purchases two privileges with its wholesaling tax.

Moreover, Supreme Court precedent sustaining sales and use taxes precludes accepting this argument. That precedent requires us to compare burdens imposed on products

even when taxes are imposed on privileges. *Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937) shows this. In that case, the Supreme Court upheld a Washington use tax which gave credit for use or sales taxes paid in Washington or other states. The Court could have said that the user of in–state products pays one tax for two privileges, since the use tax was levied on the privilege of using personal property. *See Henneford,* at 579. The resident taxpayer pays one tax and gets two privileges, purchase and use. A taxpayer from out of state pays one tax and gets only one privilege for the tax, use. The Court, however, sustained the use tax. Were we to accept the two privileges argument, we would cast into doubt Supreme Court precedent sustaining sales and use taxes.

Taxpayers also argue that the new statute requires conformity to other states' taxes as a condition to equal treatment. Brief of Appellants, at 34. It does nothing of the sort. Out–of–state taxpayers, like in–state taxpayers, can use credits on one activity to offset taxes on another. Neither may use other kinds of taxes, such as excise tax, for credits. *Cf. New Energy Co. v. Limbach,* 486 U.S. 269, 100 L. Ed. 2d 302, 108 S. Ct. 1803 (1988) (invalidating ethanol credit on fuel made available only to in–state producers or out–of–state producers from states providing a similar credit).

The heart of taxpayers' argument is the alleged continuing discriminatory effect of Washington's tax. This argument has no factual basis.

Businesses have applied for $1,304,000 worth of credits under the new law. This amount is á small fraction of the total tax the state collects from interstate manufacturers. The taxpayers use these facts to suggest that the amendment had no practical effect and therefore did not remedy the discrimination the Tyler Court identified. Brief of Appellants, at 19–26.

The fact that businesses have applied for $1,304,000 worth of credits proves beyond a shadow of a doubt that the new law had a practical effect. Taxpayers' argument can

only be understood as a complaint about the magnitude of the effect.

But the *Tyler* Court did not base its decision on the magnitude of the problem the litigants presented. Indeed, the *Tyler* Court specifically rejected the argument that taxpayers needed to examine tax burdens in other states in order to conclude that the tax was discriminatory. *See Tyler,* 483 U.S. at 247. We cannot conclude that discrimination continues because the revenues flowing from credits based on out–of–state taxes disappoint the expectation of the taxpayers or fall short of the estimates of the government.

██ The taxpayers argue that the Legislature intended to enact legislation making no practical difference. But taxpayers' own brief asserts that the Legislature expected the new legislation to cost the state between $32 million and $42 million dollars. Brief of Appellants, at 7. The motives of the Legislature are probably irrelevant to the question of whether a tax law discriminates against interstate commerce. *See Henneford v. Silas Mason Co., supra* at 586 (improper motives will seldom if ever cause invalidation of a tax); *A. Magnano Co. v. Hamilton,* 292 U.S. 40, 78 L. Ed. 1109, 54 S. Ct. 599 (1934) (the motives of the Legislature are irrelevant to questions of state taxation under the due process clause).

██ Moreover, the State's desire to maintain its revenues is proper. Indeed, the Supreme Court has repeatedly stated that the commerce clause does not relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business. *See, e.g., Complete Auto Transit,* 430 U.S. at 279; *Western Live Stock v. Bureau of Rev.,* 303 U.S. 250, 254, 82 L. Ed. 823, 58 S. Ct. 546 (1938). State tax revenues fund every beneficial action the state takes.

The legislative intent appears in section 1 of the 1987 credit law:

It is the intent of this act to preserve the integrity of Washington's business and occupation tax system and impose only that

financial burden upon the state necessary to establish parity . . . between . . . taxpayers.

1987 credit law, ch. 3, § 1. These motives are proper.

Taxpayers only challenge the discriminatory effect of the new law. They concede that the tax is fairly apportioned. Brief of Appellants, at 24.

A long line of precedent has held that Washington's B&O tax meets the fair apportionment test. *Department of Rev. v. Association of Wash. Stevedoring Cos.*, 435 U.S. 734, 750, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978); *Standard Pressed Steel Co. v. Department of Rev.*, 419 U.S. 560, 564, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975); *Chicago Bridge & Iron Co. v. Department of Rev.*, 98 Wn.2d 814, 826–30, 659 P.2d 463, *appeal dismissed*, 464 U.S. 1013 (1983). This court ruled that the B&O tax without the 2–way credit posed no apportionment problem in *National Can Corp. v. Department of Rev.*, 105 Wn.2d 327, 340–42, 715 P.2d 128 (1986). The Supreme Court did not disagree. Indeed, it rejected Tyler's fair apportionment challenge to the wholesale tax. *Tyler*, 483 U.S. at 253.

The taxpayers point out that the Legislature failed to adopt an apportionment formula commonly used to allocate a national corporation's tax base among states having corporate income taxes. Brief of Appellants, at 5. They argue that the Legislature by rejecting the formula and adopting the 2–way credit chose "phraseology" designed to have no practical effect. The record does not show that the Legislature or any of its committees ever voted on an apportionment formula. But memoranda by committee staff pointed out that adoption of an apportionment formula might remedy the problem identified in *Tyler*. These facts say nothing about whether the tax is discriminatory.

■ The new tax does not violate principles of equal protection. Equal protection requires that a challenged tax classification have a legitimate purpose to which the tax is rationally related. *Hooper v. Bernalillo Cy. Assessor*, 472 U.S. 612, 618, 86 L. Ed. 2d 487, 105 S. Ct. 2862 (1985). This case does not resemble the domestic preference taxes which

the Supreme Court struck down in cases cited by taxpayers. *See, e.g., Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 84 L. Ed. 2d 751, 105 S. Ct. 1676 (striking down 5 to 4 a tax imposing 3 to 4 percent taxes on out–of–state insurer's premiums while taxing domestic insurers at 1 percent), *reh'g denied,* 471 U.S. 1120 (1985); *Williams v. Vermont,* 472 U.S. 14, 86 L. Ed. 2d 11, 105 S. Ct. 2465 (1985) (striking down a credit for out–of–state sales tax on automobiles made available to in–state residents only). Having concluded that the new tax does not discriminate against interstate commerce, we likewise conclude it poses no equal protection problem.

 The tax does not run afoul of the due process clause either. The due process clause requires a minimal connection between interstate activities and the taxing state. It also requires a rational relationship between the income attributable to the state and the intrastate values of the enterprise. *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 436–37, 63 L. Ed. 2d 510, 100 S. Ct. 1223 (1980). This tax, like its predecessor, meets these standards. *See Tyler Pipe Indus., Inc. v. Department of Rev.,* 105 Wn.2d 318, 323–26, 715 P.2d 123 (1986); *see also Tyler,* 483 U.S. at 251 (agreeing that the tax meets the nexus requirement).

 The Supreme Court said that providing a credit for manufacturing taxes would cure the constitutional defect in Washington's B&O tax. The Legislature did this and more. The taxpayers concede that the State has remedied the internal consistency problem which the *Tyler* Court identified. The new tax law is constitutional.

### III

The trial court found that the taxpayers were entitled to a refund for all taxes paid from June 23 to August 11, 1987 and ordered refunds of $2,769,978 plus penalties and interest. The government challenges this ruling. It argues that taxpayers have a right to the 2–way credit during this period, but have no right to a full refund.

We find that the 1987 and 1985 credit laws read together indicate that the Legislature intended the 2–way credit to apply to the taxes at issue here. Moreover, retroactive application of the law to the interim period does not violate the Washington State Constitution.

In 1985, the Legislature, apparently aware that the logic of the Supreme Court's decision in *Armco Inc. v. Hardesty,* 467 U.S. 638, 81 L. Ed. 2d 540, 104 S. Ct. 2620 (1984) might doom Washington's multiple activities exemption, passed legislation designed to ameliorate the consequences of such an event. The 1985 credit law allowed Washington manufacturers to claim a credit for out–of–state gross receipts taxes on sales. Laws of 1985, ch. 190, § 1(4)(b). But the credit only applies if a court finds the multiple activities exemption unconstitutional and finds relief appropriate. Laws of 1985, ch. 190, § 1(4)(a). This law remedies the problems of discrimination of in–state manufacturers selling out of state, the problem before the *Tyler* Court. It provides no credits for out–of–state manufacturers paying a manufacturing tax at home and then paying a tax on sales in Washington.

The 1987 legislation cured this defect and continued the credit provided in the 1985 legislation. *See* House Journal, 50th Legislature (1987), at 2572; Senate Journal, 50th Legislature (1987), at 2682. But section 5 of the new law said it shall "take effect immediately." 1987 credit law, § 5. Because this occurred a month and a half after *Tyler,* taxpayers argue that no tax existed during the interim period.

 Section 3 of the law shows that the Legislature intended to apply relief retroactively in the event of a court–ordered remedy notwithstanding the effective date of the act. It states:

> If it is determined by a court . . . that relief is appropriate for any tax reporting periods before the effective date of this act, in respect to [the multiple activities exemption] as it existed before the effective date of this act, it is the intent of the legislature that the credits . . . shall be applied . . . and that relief . . . be limited to the granting of such credits.

1987 credit law, ch. 3, § 3. Given the holding of the *Tyler* Court, some relief is clearly appropriate. Our determination that some relief is appropriate triggers both the 1985 and 1987 legislation.

The taxpayers argue that because section 3 begins with the word if, the Legislature did not intend to have this law apply to the interim period. They persuaded the trial court that no tax existed in the interim period.

This is a poor statutory interpretation. The preamble refers to taxpayers who have conducted and will conduct business in Washington. 1987 credit law, § 1. This suggests that the Legislature thought the law might be applied retroactively. Moreover, the preamble and legislative history leave no doubt that the law was intended to extend the 1985 "system of credits". *See* 1987 credit law, § 1; House Journal, 50th Legislature (1987), at 2752; Senate Journal, 50th Legislature (1987), at 2682.

Our case law fully supports extension of tax benefits to new classes of people when the Legislature intends this result.[4] In *Simpson v. State,* 26 Wn. App. 687, 615 P.2d 1297 (1980), the Court of Appeals found a statute providing a tax credit for cars purchased in other states unconstitutional. The court remedied the constitutional defect by extending the exemption to cover cars purchased in Canada.

It did so because striking down the unconstitutional exemption and severing it from the statute would have defeated the legislative purpose by denying the exemption to those the Legislature meant to benefit. *Simpson,* 26 Wn. App. at 695–96. Similarly, were we to strike down the "2–way credit" we would do violence to the legislative scheme by creating a double tax on intrastate businesses. *See Crown Zellerbach Corp. v. State,* 45 Wn.2d 749, 753–54, 278 P.2d 305 (1954) (legislative policy of B&O tax is to

---

[4]We have, on the other hand, declined to extend exemptions or credits when the Legislature did not clearly intend such a result. *See, e.g., Associated Grocers, Inc. v. State,* 114 Wn.2d 182, 787 P.2d 22 (1990).

avoid double taxation).[5] Declaring the entire statute invalid would likewise defeat the Legislature's purpose.

The taxpayers have argued that interpreting the legislation to apply to this lawsuit raises constitutional difficulties. See Reply Brief of Appellants, at 14. We are not impressed with these difficulties.

Taxpayers challenge the retroactive application of the credits on separation of powers grounds. State law governs the relationship between the Washington Legislature and its courts. Accordingly, our discussion rests entirely upon our independent opinion of the requirements of the Washington State Constitution. Taxpayers have cited no federal case supporting their position and we cite no federal cases in this discussion. We have cited federal law in other separation of powers cases, but only for purposes of guidance. Federal law does not compel the results reached in this case.

Taxpayers argue that the Legislature may not prescribe a remedy for a lawsuit. Taxpayers cite *Tacoma v. O'Brien*, 85 Wn.2d 266, 534 P.2d 114 (1975) to support this proposition. The *O'Brien* case does not stand for the proposition that the Legislature may not prescribe a remedy for a lawsuit. The *O'Brien* court struck a statute which interfered with a judicial determination of what constituted economic impossibility in a contract case. *O'Brien*, 85 Wn.2d at 272. The court therefore refused to enforce a legislative finding that contracts entered into prior to the legislation have become economically impossible to perform.

Our recent decision in *Haberman v. WPPSS*, 109 Wn.2d 107, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed,* 488 U.S. 805 (1988), controls this case. We wrote:

> A statute prescribing new rules to be applied to pending litigation is generally constitutional . . . Separation of powers principles are violated only when the Legislature infringes on a judicial function. . . .

---

[5]The "2-way credit," like the multiple activities exemption it superseded, protects businesses from double taxation.

109 Wn.2d at 143. A statute prescribing new rules to be applied to a pending lawsuit is especially appropriate in the context of tax litigation by a large group of litigants. Providing a remedy in this suit requires decisions on tax policies. The Legislature should make these decisions. Applying the 1987 credit law retroactively, as well as prospectively, does not violate separation of powers.

The taxpayers argue that the legislation applied retroactively violates the state constitutional prohibition on special legislation. Const. art. 2, § 28. This argument is not correct. The legislation is not aimed only at this lawsuit. It applies prospectively as well as retroactively. It thus involves an open–ended classification, not special legislation. *See Metropolitan Seattle v. Seattle,* 57 Wn.2d 446, 451–52, 357 P.2d 863 (1960) (rejecting contention that law applicable to one drainage basin is special legislation). Taxpayers' argument that retroactive application violates equal protection principles has no support in their brief and no merit.

We hold that the taxpayers are entitled to a 2–way credit for taxes paid during the interim period. Full refunds are not appropriate. We reverse the trial court's holding in this respect.

We have found that the B&O tax as amended in 1987 is constitutional. Moreover, the 1987 credit law limits relief to the granting of credits. Accordingly, we affirm in part and reverse in part.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.