**V-1 OIL COMPANY, a Wyoming corporation, Appellant (Defendant),**

v.

**The PEOPLE of the State of Wyoming, Appellee (Plaintiff).**

No. 89–205.

Supreme Court of Wyoming.

Oct. 24, 1990.

F.M. Andrews, Jr. and Robert O. Anderson of Andrews and Anderson, P.C., Riverton, for appellant.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, and Steve Jones, Sr. Asst. Attys. Gen., for appellee.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

By appeal, this case invokes consideration of the effect of a statutory provision, penal or punitive in nature, which was expressly repealed before appeal decision, but

* Chief Justice at time of oral argument.

following entry of a district court monetary judgment. Appellant V-1 Oil Company (V-1 Oil), based on the enacted statute, moved to vacate the judgment and release a posted supersedeas bond of $50,000. We grant V-1 Oil's motion, reverse and remand for entry of dismissal of the environmental agency judgment obtained against V-1 Oil, the operator of a self-service gasoline station.

## I.

## PROCEDURAL HISTORY

V-1 Oil, for an extended time, had operated a retail station in Lander, Wyoming.

Question arose whether underground tanks or pipe connection leakage had occurred, polluting the subsurface and invading underground aquifers. An extended, active and hostile course of administrative agency proceedings ensued.[1]

This proceeding, as a district court damage action, was separately and consecutively initiated in the First Judicial District under the penal provision of the Wyoming Environmental Quality Act, W.S. 35-11-301(a)(i) and (ii) and 35-11-901(a) and (q).[2] As a result of this district court proceeding, which in effect superceded the pending administrative proceeding, a judgment was

1. *See V-1 Oil Co. v. Dept. of Environmental Quality, Environmental Quality Council,* No. 90-12 (Dismissed 3/2/90), which was recently dismissed in this court, and *Matter of Contempt Order Issued Against Anderson,* 765 P.2d 933 (Wyo.1988). *See also V-1 Oil Co. v. State of Wyo., Dept. of Environmental Quality,* 902 F.2d 1482 (10th Cir.1990).

2. W.S. 35-11-901 provides:

(a) Any person who violates, or any director, officer or agent of a corporate permittee who willfully and knowingly authorizes, orders or carries out the violation of any provision of this act, or any rule, regulation, standard or permit adopted hereunder or who violates any determination or order of the council pursuant to this act or any rule, regulation, standard, permit, license or variance is liable to either a penalty of not to exceed ten thousand dollars ($10,000.00) for each day during which violation continues, or, for multiple violations by surface coal mining operations, a penalty of not to exceed five thousand dollars ($5,000.00) for each violation for each day during which the violation continues, which may be recovered in a civil action, and the person may be enjoined from continuing the violation as hereinafter provided.

(b) Except for surface coal mining operations, damages are to be assessed by the court. For surface coal mining operations, all notices for abatement and cessation orders shall be reported to the director. The director shall:
(i) Issue a notice of assessment, if a cessation order was issued;
(ii) Make a determination on whether a notice of assessment will be issued, if a notice for abatement was issued.

(c) Upon issuance of a notice of abatement or cessation order, the director shall inform the operator of the proposed amount of the penalty within thirty (30) days. The amount shall be determined in accordance with rules and regulations promulgated by the council. The person charged with the penalty shall

have fifteen (15) days to request a conference with the director for informal disposition of any dispute over either the amount of the penalty or the occurrence of the violation.

(d) If a conference is held and after the director has determined that a violation did occur and the amount of the penalty which is warranted, the person charged with the penalty shall, within fifteen (15) days, either:
(i) Pay the proposed penalty in full; or
(ii) Petition the council for review of either the amount of the penalty or the fact of the violation, submitting a bond equal to the proposed amount of the penalty at the time of filing the petition. The bond shall be conditioned for the satisfaction of the penalty in full, or as modified by the council, if the director's determination as to the occurrence of the violation and the assessment of a penalty are affirmed. The petition is effective when the bond is approved by the council. If the bond is not approved, the person charged with the penalty has ten (10) days to forward the proposed amount to the council for placement in an escrow account in order to make the petition effective.

(e) If a conference is not requested, the person charged with the penalty has thirty (30) days to take the action described in subsection (c) of this section.

(f) After a petition is effective, the council shall hold a hearing, which shall be conducted as a contested case proceeding, as required by the Wyoming Administrative Procedure Act [§§ 16-3-101 through 16-3-115]. The council shall either:
(i) Determine the occurrence of the violation and the amount of penalty which is warranted for the purpose of ordering that the penalty be paid; or
(ii) Determine that no violation occurred, or that the amount of penalty should be reduced. If such a determination is made either through administrative or judicial review, the director shall within thirty (30) days remit the appropriate amount to the person, if any deposit has been made, with interest at the rate

entered June 29, 1989 against V–1 Oil providing in part:

1. Defendant, V–1 Oil Company, shall pay a penalty in this matter of fifty thousand dollars ($50,000.00) for violations of the Wyoming Environmental Quality Act, specifically W.S. 35–11–301(a)(i) and (ii). Such violations include but are not limited to V–1 Oil ignoring the presence of contamination in the groundwater. The penalty must be paid by the Defendant to the State of Wyoming within ninety (90) days of the date of this Final Order.

\* \* \* \* \* \*

18. A suspended penalty against the Defendant, V–1 Oil Company, in the amount of one million ($1,000,000.00) dollars, is hereby imposed upon the Defendant. Should the Defendant fail to cleanup the plume, as required by the terms of this Final Order the suspension of this penalty shall be removed, and the Defendant shall be required to pay to the State of Wyoming, within one hundred twenty (120) days, the amount of one million ($1,000,000.00) dollars.

Responding to entry of the judgment, V–1 Oil posted a $50,000 cash supersedeas bond and appealed to this court citing issues including:

I. The district court was without subject matter jurisdiction over this action, exclusive jurisdiction to find a violation, impose a penalty and issue a mandatory injunction and cleanup order being reserved to the administrative body.

II. There was an insufficiency of evidence upon which to find, as a matter of law, that V–1 Oil Company caused, threatened or allowed pollution to enter groundwaters of the state.

III. The statute was applied retroactively, contrary to law.

IV. The court erred in not granting a new trial or in the alternative hearing newly discovered evidence.

V. The court abused its discretion in imposing a $50,000.00 penalty and a $1,000,000.00 conditional penalty.

Underground storage tank problems in Wyoming initiated extensive legislative attention in numerous meetings. After an interim session study, Wyo.Sess.Laws ch. 98 (1990), effective March 21, 1990, was enacted to comprehensively address the problems in an act entitled "Water Pollu-

of six percent (6%), or at the prevailing department of the treasury rate, whichever is greater. Failure to file an effective petition shall result in a waiver of all legal rights to contest the violation or the amount of the penalty.

(g) Any person aggrieved or adversely affected in fact by a final decision of the council pursuant to this section is entitled to judicial review in accordance with the Wyoming Administrative Procedure Act.

(h) Any person who violates this act, or any rule or regulation promulgated thereunder, and thereby causes the death of fish, aquatic life or game or bird life is, in addition to other penalties provided by this act, liable to pay to the state, an additional sum for the reasonable value of the fish, aquatic life, game or bird life destroyed. Any monies so recovered shall be placed in the general fund of Wyoming, state treasurer's office.

(j) Any person who willfully and knowingly violates, or any director, officer or agent of a corporate permittee who willfully and knowingly authorizes, orders or carries out the violation of any provision of this act or any rule, regulation, standard, permit, license, or variance or limitations adopted hereunder or who willfully violates any determination or order of the council or court issued pursuant to this act or any rule, regulation, standard, permit or limitation issued under this act shall be fined not more than twenty-five thousand dollars ($25,000.00) per day of violation, or imprisoned for not more than one (1) year, or both. If the conviction is for a violation committed after a first conviction of such person under this act, punishment shall be by a fine of not more than fifty thousand dollars ($50,000.00) per day of violation or by imprisonment of not more than two (2) years, or both.

\* \* \* \* \* \*

(q) All actions pursuant to this article shall be brought in the county in which the violation occurred or in Laramie county by the attorney general in the name of the people of Wyoming.

W.S. 35–11–301(a)(i) and (ii) states:

(a) No person, except when authorized by a permit issued pursuant to the provisions of this act, shall:

(i) Cause, threaten or allow the discharge of any pollution or wastes into the waters of the state;

(ii) Alter the physical, chemical, radiological, biological or bacteriological properties of any waters of the state[.]

tion from Underground Storage Tanks Corrective Action Act of 1990," W.S. 35–11–1414(a).[3]

## II.

## FACTS AND CURRENT LEGISLATION

Passage of the Water Pollution from Underground Storage Tanks Corrective Action Act of 1990 presented a new issue for this appeal resulting from W.S. 35–11–1418(a), (b) and (c) of that comprehensive enactment which provides:

(a) The state attorney general shall move to dismiss any pending or ongoing suits or administrative actions which are based on the requirement the owner and operator take corrective action or which are for cost recovery of state corrective actions. The defendants in cases which are dismissed may become eligible for use of corrective action account monies in the same manner as any other owner or operator. Failure to take the necessary actions to become eligible shall result in the owner or operator who was a defendant in a dismissed case being considered ineligible for use of the corrective action account monies in the same manner as any other owner or operator.

(b) Any obligations owed the state under court orders or negotiated settlements resulting from suits requiring corrective action shall be released by the state if the owner or operator of the site takes action necessary to become eligible for use of corrective action account monies.

---

**3.** The Water Pollution from Underground Storage Tanks Corrective Action Act provides in part:

(b) The legislature recognizes the threat to the public health, safety, welfare and the environment caused by pollution to water from underground storage tanks. The purpose of this article is to take primacy of the underground storage tank program and to provide funding to take corrective actions at sites contaminated by underground storage tanks.

(c) The legislature also recognizes that owners and operators cannot take corrective action without placing their businesses' existence in financial jeopardy. The legislature finds that, because Wyoming is a large rural state, it is in the public interest to take corrective action at contaminated sites so that fuel

(c) The state shall not reimburse any person for payments made prior to the effective date of this article to the state or any other person pursuant to a court order or negotiated settlement arising from a release from an underground storage tank. ·

Despite the passage of the statute, the State declined to dismiss this case or release the judgment and V–1 Oil moved this court for an "Order of Dismissal of the Judgment and Order before the Court on appeal, or in the alternative, for an Order remanding this matter to the District Court, First Judicial District, with directions to vacate the judgment and order entered herein and to dismiss plaintiff's complaint with prejudice and to release defendant/appellant's bond of $50,000.00." Briefs on the motion were filed by both litigants and this court deferred consideration until after scheduled oral argument. The two new issues developed by the motion by passage of the 1990 legislation were whether (1) posting a supersedeas bond constituted a "payment made prior to the effective date of the [statute]" and (2) institution of appeal continues a "pending or ongoing suit or administrative action."

In assessment of the legislative intent, we determine both issues in favor of V–1 Oil.[4]

## III.

## SUPERSEDEAS BOND

 The argument of the State that posting a supersedeas bond constituted a

---

will continue to be readily available throughout Wyoming.
W.S. 35–11–1414.

**4.** We judicially notice that Representative Dennis W. Tippets chaired the legislative interim committee public meetings and bill preparation as a legislator elected from Fremont County, Wyoming. We were advised during oral argument by the attorney for the State that there apparently was only one other "pending" proceeding in the state at bill enactment date. Constitutionality questions about special legislation were neither raised nor considered in this court. *See* Wyo. Const. art. 3, § 27. *Cf. American Nat. Can Corp. v. State, Dept. of Revenue,* 114 Wash.2d 236, 787 P.2d 545 (1990).

payment made to trigger W.S. 35–11–1418(c) lacks logical or precedential support.[5] The essence of posting a supersedeas bond by an appellant following judgment entry is to avoid a mootness challenge that might otherwise arise if the judgment is paid before appeal is taken, *Greenough v. Prairie Dog Ranch, Inc.*, 531 P.2d 499, 502 (Wyo.1975); *see also Yellowstone Sheep Co. v. Ellis*, 55 Wyo. 63, 96 P.2d 895 (1939), or alternatively that the judgment creditor in absence of security would proceed to execution, *Farmers' State Bank of Riverton v. Haun*, 29 Wyo. 322, 213 P. 361 (1923). The supersedeas bond constitutes security provided by the judgment debtor to avoid execution on the judgment and does not constitute accomplished payment until an unqualified right to the proceeds accrues after the judgment is affirmed on appeal. *Wyoming Bancorporation v. Bonham*, 563 P.2d 1382, *reh'g denied* 566 P.2d 219 (Wyo.1977).

## IV.

## PENDING OR ONGOING SUIT OR ADMINISTRATIVE ACTION

■ Definition of a pending or ongoing suit reaches into a broad array of case law considering retroactivity questions. We follow the general and well-enunciated determination that pending or ongoing status for litigation defines the time through determined appeal. *MacKenzie v. a Engel-hard & Sons Co.*, 266 U.S. 131, 142, 45 S.Ct. 68, 68, 69 L.Ed. 205 (1924); *Pieper v. City of Scottsbluff*, 176 Neb. 561, 126 N.W.2d 865 (1964); *Haynes v. City of Seattle*, 87 Wash. 375, 151 P. 789 (1915); *State v. Tugwell*, 19 Wash. 238, 257, 52 P. 1056 (1898).[6]

The issue presented is the pending status of the litigation and not the final order for appealability. *See* W.R.A.P. 1.05. Consequently, we do not find that the case cited by the State, *P B Realty Co. v. Wallace*, 93 N.E.2d 603 (Ohio App.1950), is authoritative or dispositive. The peculiar nature of *P B Realty Co.*, as an intermediate appellate decision involving rental contract with forceful eviction and detainer, does not detract from the predominant rule well stated by *MacKenzie*, 266 U.S. 131, 45 S.Ct. 68. "An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of." *Id.* at 142–43, 45 S.Ct. at 68–69. *See also Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, *reh'g denied* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974); *Snyder v. Buck*, 340 U.S. 15, 71 S.Ct. 93, 95 L.Ed. 15 (1950); *Hardy v. Western Landscape Const.*, 141 Cal.App.3d 1015, 190 Cal.Rptr. 766 (1983); *Wilson v. Clark*, 414 So.2d 526 (Fla.App.1982); *Pieper*, 126 N.W.2d 865; and *Reickhoff v. Consolidated Gas Co.*, 123 Mont. 555, 217 P.2d 1076, 1080 (1950).[7] There is no finality to the proceeding until

---

**5.** W.R.A.P. 2.07, captioned Supersedeas Bonds, provides in relevant part:

Whenever an appellant entitled thereto desires a stay on appeal, he may present to the court at or before the time of filing his notice of appeal, a supersedeas bond in such amount as shall be fixed by the district court and with surety or sureties to be approved by the court or by the clerk thereof. The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is not perfected or is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the Supreme Court may adjudge and award. * * * A separate supersedeas bond need not be given, unless otherwise ordered, when the appellant has already filed in the district court security including the event of appeal, except for the difference in amount, if any.

A supersedeas is a stay of proceedings and the supersedeas bond frequently filed upon appeal is "required of one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful." Blacks Law Dictionary 1289 (5th ed. 1979). *See Wyoming Bancorporation v. Bonham*, 563 P.2d 1382, 1392, *reh'g denied* 566 P.2d 219 (Wyo.1977).

**6.** The parenthetical requirement addressed in *Matter of Boyd's Estate*, 606 P.2d 1243, 1245 (Wyo.1980) for retroactivity statutes is met by this statutory text when explicitly applied to "any pending or ongoing suits or administrative actions."

**7.** Pending status for ongoing litigation was exhaustively researched and detailed by citation in *Schuler v. State*, 771 P.2d 1217, 1237 n. 12 (Wyo. 1989) (Urbigkit, J., dissenting).

the appeal is concluded. *People ex rel. Gow v. Mitchell Bros' Santa Ana Theater*, 101 Cal.App.3d 296, 161 Cal.Rptr. 562 (1980); *Golden Rule Ins. Co. v. Robeza*, 194 Ill.App.3d 468, 141 Ill.Dec. 506, 551 N.E.2d 693 (1990).

The intent of the legislature was both clear and explicit when W.S. 35–11–1418(a) and (b) was enacted. The establishment and removal of penal and punitive constraints for societal misconduct are vested in that branch of government. *Baum v. State*, 745 P.2d 877 (Wyo.1987); Wyo. Const. art. 2, Distribution of Powers.

V.

DISPOSITION

We reverse and remand to the district court for entry of an order releasing the judgment in compliance with W.S. 35–11–1418(a) and (b).