916 P.2d 933 (1996)
129 Wash.2d 177
DIGITAL EQUIPMENT CORPORATION, Appellant,
v.
The STATE of Washington, DEPARTMENT OF REVENUE, Respondent.
No. 62414-3.
Supreme Court of Washington, En Banc.
Argued October 27, 1995.
Decided May 23, 1996.
*934 Lane, Powell, Spears & Lubersky, George Mastrodonato, Kathleen Benedict, Olympia, Lane, Powell, Spears & Lubersky, Michael King, Seattle, for appellant.
Christine O. Gregoire, Attorney General, Donald Cofer, Asst., Olympia, for respondent.
SMITH, Justice.
Digital Equipment Corporation seeks direct review by this court of a Thurston County Superior Court order on summary judgment dismissing Digital's action for refund of or credit for business and occupation (B & O) taxes paid to the State of Washington between January 1, 1983 and August 11, 1987. We granted review. We affirm only the dismissal.

QUESTIONS PRESENTED
The questions presented in this case are: (1) whether United States Supreme Court decisions rendered subsequent to this court's 1988 decision in National Can II[1] have undermined that holding, which denied retroactive application of the Supreme Court's 1987 ruling in Tyler Pipe Industries v. Department of Revenue,[2] a case which struck down as unconstitutional Washington's business and occupation (B & O) tax exemption scheme; and (2) whether the remedy of retroactively applying the 1987 B & O tax credit legislation (RCW 82.04.440) meets the requirements of due process under the Fourteenth Amendment.[3]

STATEMENT OF FACTS
In 1984, a group of taxpayers filed suit for refunds of B & O taxes paid to the state of Washington. The taxpayers argued that the state's B & O tax exemption under RCW 82.04.440 violated the Commerce Clause of the United States constitution, article I, section 8, by providing to local manufacturers selling goods in this state a tax exemption not available to manufacturers who sold goods out of state. This court ultimately rejected that argument in the companion cases of Tyler Pipe Industries v. Department of Revenue and National Can Corporation v. Department of Revenue.[4]
In Tyler Pipe Industries v. Department of Revenue, the United States Supreme Court subsequently reversed both Tyler Pipe and National Can, holding that the tax exemption discriminated against interstate commerce in violation of the Commerce Clause.[5] The Court then remanded the case to this court for resolution of "remedial issues."[6] In National Can Corporation v. Department of Revenue (National Can II) we held that the Tyler Pipe decision operated only prospectively and thus no claims could be made for taxes which were paid prior to the decision in that case.[7]
*935 The Washington Legislature responded to the Supreme Court decision in Tyler Pipe by amending the B & O tax exemption statute on August 11, 1987. The amendment replaced the old multiple activities exemption with a two-way credit scheme. The amendment cured the constitutional defect identified by the Court in Tyler Pipe[8] by granting to businesses a credit for gross receipts taxes paid to this or any other state.[9] Although the new credit law expressly stated it was to "take effect immediately,"[10] the Legislature intended that the new law would operate retroactively in the event of a court-ordered remedy.[11] The Legislature also intended that these tax credits would be the exclusive remedy available for those entitled to relief.[12]
On August 27, 1987, Digital filed a complaint in the Thurston County Superior Court seeking refund of B & O taxes it paid between January 1, 1983 and July 31, 1987.[13] On December 29, 1988, Digital filed an amended complaint seeking an additional refund of taxes paid from June 23, 1987 through August 11, 1987, the interim period between the Tyler Pipe decision and the effective date of the 1987 legislation (the interim period).[14] The amended complaint also charged that the state's collection efforts of "said illegal taxes" were in violation of 42 U.S.C. § 1983, thus entitling Digital to attorney fees under 42 U.S.C. § 1988.[15]
On April 11, 1994, Digital moved for an order of partial summary judgment to grant its tax refund request for the period January 1, 1983 through August 11, 1987 and an award of attorney fees.[16] The state cross-motioned for summary judgment on April 18, 1994, arguing for outright dismissal of Digital's action.[17] By opinion letter dated September 9, 1994, Judge William Thomas McPhee granted partial summary judgment in favor of the state and dismissed Digital's refund claim as to all tax periods prior to June 23, 1987, but reserved ruling on taxes paid during the interim period pending further oral argument.[18] Digital then filed a motion for reconsideration on October 5, 1994.[19]
On November 18, 1994, Judge McPhee entered an order denying Digital's motion for reconsideration, granting the state's motion for summary judgment and dismissing Digital's refund claim in its entirety with prejudice.[20] In dismissing Digital's claim, the trial court relied primarily on this court's holding in National Can II that the Tyler Pipe decision was to operate only on a prospective basis.[21]
On December 16, 1994, Digital appealed direct to this court for review.[22] It argues that United States Supreme Court cases decided subsequent to National Can II have undermined this court's holding in that case, and those cases now require that Tyler Pipe be applied retroactively to tax periods predating *936 its determination.[23] Digital also maintains that the 1987 tax credit law, RCW 82.04.440, does not provide it with meaningful redress for taxes it paid under the previous unconstitutional scheme, and hence violates its rights under the Due Process Clause of the Fourteenth Amendment.

DISCUSSION

RETROACTIVITY OF TYLER PIPE
This court was asked in National Can II to decide whether the United States Supreme Court's decision in Tyler Pipe, which declared Washington's B & O tax exemption scheme unconstitutional, must be applied retroactively or applied only prospectively. In deciding the issue, we relied primarily on the retroactivity test outlined by the Supreme Court in Chevron Oil v. Huson.[24] In that case, three factors were enumerated for consideration in determining whether an appellate decision applies prospectively or retroactively: (1) whether the decision establishes a new rule of law by overruling clear past precedent or deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether retroactive application would further or retard the purposes of the rule; and (3) whether retroactive application would be inequitable.[25] Employing the Chevron Oil criteria, we concluded that Tyler Pipe applied on a prospective basis only and did not render taxes collected prior to the date of its determination unconstitutional.[26]
However, as later observed by this court in Robinson v. Seattle,[27] the precedential weight to be accorded Chevron Oil has been called into question by recent United States Supreme Court decisions. In James B. Beam Distilling Co. v. Georgia, a taxpayer brought a refund suit against Georgia, claiming a state tax statute which favored alcohol products produced from local goods violated the Commerce Clause.[28] The lower courts agreed the statute was unconstitutional in light of the Supreme Court's decision in Bacchus Imports, Ltd. v. Dias striking down a similar Hawaii statute,[29] but concluded the taxpayer was not entitled to a refund.[30] Using the test outlined in Chevron Oil, the Georgia Supreme Court held the Bacchus decision should not apply retroactively to facts antedating its pronouncement.[31]
The United States Supreme Court reversed without considering the Chevron Oil rationale. It held that because the decision in Bacchus applied the rule to the parties then before the Court, that rule should apply to all cases still pending.[32] The Court reasoned that it was error "to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so."[33] Although the Court in Bacchus had not explicitly addressed the question whether its holding should apply retroactively to facts predating its pronouncement, the Court in Beam concluded that retroactivity is assumed when the question of retroactivity is not reserved.[34] Writing for the majority, Justice Souter noted that "[b]ecause the Bacchus opinion did not reserve the question *937 whether its holding should be applied to the parties before it, ..., it is properly understood to have followed the normal rule of retroactive application in civil cases."[35]
In Harper v. Virginia Dep't of Taxation, the Supreme Court was confronted with a Virginia tax statute which exempted from state income taxes only those retirement pensions paid by either state or local governments.[36] The Court had previously decided in Davis v. Michigan Dep't of Treasury that a similar tax imposed by Michigan violated the constitutional doctrine of intergovernmental tax immunity because it treated federal employees differently from state employees.[37] After Davis, Virginia repealed the exemption statute.[38] Taxpayers sued the Virginia Department of Revenue seeking refund of taxes paid under the discriminatory scheme.[39]
The trial court denied the refunds on the basis that the Davis decision did not apply retroactively the Virginia Supreme Court affirmed.[40] Applying the Chevron Oil test, the court held that Davis did not operate retroactively and that pre-Davis tax assessments thus were not improper.[41] Reasoning that because the Court in Davis had not ruled on whether to apply its holding to the litigants in that case, the Virginia court concluded that it remained free to apply the Chevron Oil analysis.[42] The Supreme Court reversed. Reiterating Justice Souter's conclusion in Beam, the Court again noted that once a case announcing a rule of federal law has applied that rule to the litigants before the court, no court may "`refuse to apply [that] rule ... retroactively'."[43] Citing Beam, the Court then articulated the following rule on retroactive application of a previous ruling:
When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

(Emphasis added.)[44]
The Court then stated that:
When [it] does not "reserve the question whether its holding should be applied to the parties before it," ... an opinion announcing a rule of federal law "is properly understood to have followed the normal rule of retroactive application" and must be "read to hold ... that its rule should apply retroactively to the litigants then before [it]." Furthermore, the legal imperative "to apply a rule of federal law retroactively after the case announcing the rule has already done so" must "prevai[l] over any claim based on a Chevron Oil analysis."
(Emphasis added.)[45]
Relying on this new "express reservation test," the Court rejected the state court's reasoning that the issue of retroactivity had not been addressed in Davis.[46] It pointed out that in Davis the question of retroactivity had not been reserved by the Court; and since remedial issues had been considered, it had necessarily applied the rule announced in *938 Davis to the litigants before it.[47] That being the case, the Court applied the Davis rule retroactively to the tax years at issue in the Harper taxpayers' refund action.[48] The Court is thus considered to have applied a decision to the parties before it when it has not reserved the question whether its holding should be retroactively applied.[49]
When the Supreme Court remands a case exclusively for resolution of remedial issues, it has not reserved the question of retroactive application of that case.[50] Once it has applied a decision to the litigants in one case, it must do so with respect to all others not barred by res judicata or procedural requirements,[51] regardless of any conclusion derived from application of Chevron Oil principles.[52] The normal rule, then, is retroactive application of a new pronouncement of federal law unless the Court declares otherwise.[53]Chevron Oil no longer controls in this area.[54]
To the extent our decision in National Can II holds that Tyler Pipe applies only on a prospective basis, we overrule it. The rule derived from Beam and Harper is clear: when the United States Supreme Court remands a case, unless it explicitly reserves the issue of retroactive application of that case,[55] the normal rule of retroactivity is assumed. In Tyler Pipe, the Court remanded only on the issue of remedies, and did not reserve the question of retroactive application of its holding in the case.[56] Therefore, it follows that the benefit of the Tyler Pipe holding properly might extend to Digital, inasmuch as it would not be barred by either procedural requirements or by res judicata.

THE 1987 TAX CREDIT LAW
With retroactive application of the Tyler Pipe decision, Digital conceivably might be entitled to some type of relief. However, as Digital readily concedes, retroactive application of Tyler Pipe does not necessarily entitle it to a refund.[57] Our determination that Digital might be entitled to some form of relief in light of Tyler Pipe brings the 1987 credit law into operation.[58] But Digital argues the 1987 credit law, as an exclusive remedy, does not meet the requirements of federal due process.[59]
A declaration by the United States Supreme Court that a tax scheme is unconstitutional does not, as a matter of federal law, *939 require refund of taxes illegally collected.[60] Rather, "a State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination."[61] To provide relief consistent with federal due process principles, however, a state may choose to provide a predeprivation remedy, such as "a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing."[62] "On the other hand, if no such predeprivation remedy exists, `the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.'"[63] Such relief may take the form of refunds, or "some other order that `create[s] in hindsight a nondiscriminatory scheme.'"[64]
The issue in this case, then, becomes whether retroactive application of the 1987 credit law, a postdeprivation remedy, satisfies due process as "meaningful backward-looking relief" that "create[s] in hindsight a nondiscriminatory scheme" which will "rectify any unconstitutional deprivation" suffered by Digital. To pass this test, the credit law must treat Digital and those manufacturers who benefited under the prior discriminatory scheme "in a manner consistent with the dictates of the Commerce Clause."[65] It must also provide Digital with both "an opportunity to contest the validity of the tax and a `clear and certain remedy' designed to render the opportunity meaningful by preventing any permanent unlawful deprivation of property."[66]
Retroactive application of the credit law satisfies the requirements of federal due process. Under the former discriminatory tax scheme, some out-of-state manufacturers paid a wholesaling or retailing B & O tax on Washington sales and also paid manufacturing B & O taxes owed to another state. In-state manufacturers, however, were exempted from the manufacturing tax on any in-state sales subject to the wholesaling or retailing tax. The 1987 credit law remedies this problem by granting a tax credit to any manufacturer paying a gross receipts tax to the state of Washington or any other state. Retroactive application of the law equalizes the tax disparity between benefited and disadvantaged manufacturers by granting tax credits only to the latter. By retroactively granting credits only to manufacturers who suffered under the discriminatory law, the state has created "in hindsight a non-discriminatory scheme."[67]
Digital argues that under McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, the Supreme Court outlined the only three options available to states when attempting to provide meaningful backward looking relief: "(1) a full refund of the unconstitutional taxes collected, (2) a retroactive tax on the taxpayers exempted from the tax, or (3) a combination of the two remedies."[68] But nothing in the McKesson opinion suggests the Court intended this enumeration of options to be exclusive. Nor is there any *940 indication that the list of suggested remedies was meant to apply beyond the specific issue confronting the Court in that case: whether the requirements of federal due process were met when Florida provided only prospective relief to taxpayers who had been taxed under an unconstitutional scheme. Digital's interpretation of McKesson also conflicts with the general rule recognized by the Court that the states retain flexibility in crafting a remedy for the unconstitutional collection of taxes.[69]
The tax credit law, RCW 82.04.440, provides in part:
Persons taxable on multiple activitiesCredits. (1) Every person engaged in activities which are within the purview of the provisions of two or more of sections RCW 82.04.230 to 82.04.290, inclusive, shall be taxable under each paragraph applicable to the activities engaged in.
. . . .
(4) Persons taxable under RCW 82.04.230, 82.04.240, or subsection (2), (3), (4), (5), or (7) or RCW 82.04.260 with respect to extracting or manufacturing products in this state shall be allowed a credit against those taxes for any (i) gross receipts taxes paid to another state with respect to the sales of the products so extracted or manufactured in this state, (ii) manufacturing taxes paid with respect to the manufacturing of products using ingredients so extracted in this state, or (iii) manufacturing taxes paid with respect to manufacturing activities completed in another state for products so manufactured in this state. The amount of the credit shall not exceed the tax liability arising under this chapter with respect to the extraction or manufacturing of those products.
Subsection (5) defines "gross receipts tax" to include one which is "not, pursuant to law or custom, separately stated from the sales price" and "manufacturing tax" as "a gross receipts tax imposed on the act or privilege of engaging in business as a manufacturer...."
Our consideration of the principal issues in this case became acutely academic when counsel for Digital during oral argument conceded that Digital had not been "double taxed" and consequently suffered no injury under the former unconstitutional tax scheme.[70] One of the justices asked "In your particular situation, did your client actually pay out-of-state gross receipts taxes on its manufacturing operations?" Counsel for Digital then replied "We were not actually double taxed." This was further reinforced by the April 6, 1994 declaration of R.S. Kuraski, manager of federal and state income tax audits for Digital, in support of Digital's motion for partial summary judgment that:

Digital did not pay any qualifying extracting or manufacturing gross receipts taxes to any other jurisdictions outside Washington, including other state or local governments, the District Columbia or foreign countries, on any of the products which were manufactured outside the state of Washington and sold to Washington customers during the time periods [January 1, 1983 through June 23, 1987].[71]
This is consistent with the assertion of Respondent State in its brief that Digital suffered no injury and is thus entitled to no relief.[72] We also conclude that in this case Digital is entitled to no relief either by tax credits or direct refunds under RCW 82.04.440.
We therefore affirm the Thurston County Superior Court in dismissing on summary judgment Digital's action for refund of or credit for business and occupation (B & O) taxes paid to the State of Washington.
*941 Applying the 1987 credit law to Digital's claim for relief requires consideration of two tax periods. Because the law clearly applies to the interim period of June 23, 1987 and August 11, 1987,[73] Digital conceivably would have been eligible for credits for taxes paid during that period. However, the State correctly asserts that Digital is not entitled to credits for the interim period because it paid no gross receipts taxes, a requirement under the law.[74]
As to the tax period prior to June 23, 1987, the date of the Tyler Pipe decision, Digital conceivably would have been entitled to credits for this period as well. While in American National Can we addressed only the issue of retroactive application of the 1987 credit law to the interim period, section 3 of the 1987 session laws applies the law to tax periods prior to June 23, 1987.[75] In this instance as well, Digital is not entitled to tax credits because it paid no gross receipts taxes.

SUMMARY AND CONCLUSIONS
Once the United States Supreme Court has applied a new pronouncement of federal law to the parties then before the Court, it does so with respect to all others not barred by res judicata or procedural rules. The Court is considered to have applied a decision to the parties before it when it has not explicitly reserved the question whether its holding should be applied retroactively. When the Court remands a case exclusively for resolution of remedial issues, it has not reserved the question of retroactive application of that case.
In the Tyler Pipe decision, in which the Supreme Court declared Washington's B & O tax exemption scheme unconstitutional, the Court did not reserve the question of retroactivity, but instead remanded only for resolution of remedial issues. Tyler Pipe must be applied retroactively to tax periods predating its pronouncement, thus rendering taxes collected under the invalid exemption law unconstitutional. To the extent that our decision in National Can II conflicts with this interpretation of federal retroactivity law, we overrule it.
To provide a postdeprivation remedy for unconstitutionally collected taxes consistent with the principles of federal due process under the Fourteenth Amendment, a remedy must provide meaningful backward-looking relief. It must also create in hindsight a nondiscriminatory scheme which rectifies the unconstitutional deprivation.
Retroactive application of the 1987 credit law, designed to cure the constitutional infirmities of the B & O tax exemption scheme, satisfies the requirements of federal due process as a postdeprivation remedy. By providing manufacturers with tax credits for unconstitutional taxes paid, a clear and certain remedy is provided which cures the unconstitutional deprivation by equalizing the tax disparity between those manufacturers and manufacturers who were not subjected to the unconstitutional B & O taxes.
We affirm the Thurston County Superior Court only in its dismissal on summary judgment of the claim by Appellant Digital Equipment Corporation for refund of or credit under RCW 82.04.440 for business and occupation (B & O) taxes paid to the state of Washington between January 1, 1983 and August 11, 1987.
DOLLIVER and JOHNSON, JJ., concur.
DURHAM, Chief Justice, concurring.
Digital Equipment Corporation (Digital) seeks a refund of wholesale taxes on products which it manufactured outside Washington but sold in this state before August 11, 1987. Digital contends the Supreme Court's decision in Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), should be applied retroactively, and that only a refund will provide Digital with a remedy which satisfies due process. Although I *942 agree with the majority that Digital is not entitled to any relief, I disagree with the majority's reasoning and with some of the assumptions made by the parties and our prior cases.
Digital contends recent Supreme Court authority calls into question our determination in National Can Corp. v. Department of Revenue, 109 Wash.2d 878, 889, 749 P.2d 1286, cert. denied, 486 U.S. 1040, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988) (National Can II), that Tyler Pipe would apply only prospectively. I concur in the majority's determination to overrule that holding.[1] However, we should not casually assume that an out-of-state manufacturer like Digital has a valid discrimination claim under the old multiple activities exemption (MAE) or that the 1987 two-way credit scheme is the appropriate remedy for such discrimination. A review of the history of constitutional challenges to the MAE is necessary to properly evaluate Digital's claims.
The multiple activities exemption before Tyler Pipe:
Washington's business and occupation (B & O) tax system taxes both manufacturing and wholesaling. Since 1950, double tax liability for the same goods was limited by the MAE, which provided an exemption from the manufacturing tax for products which were also subject to the Washington wholesale tax. RCW 82.04.440 (1981). The effect of the MAE was such that only products which were sold outside of Washington were subject to the Washington manufacturing tax. Until the mid-1980's, this system was repeatedly but unsuccessfully challenged on the theory that it discriminated against interstate commerce. Tyler Pipe, 483 U.S. at 237, 107 S.Ct. at 2814-15 (citing General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964)).
In 1984, the Supreme Court invalidated a West Virginia tax scheme which was similar to Washington's B & O tax. Armco Inc. v. Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). West Virginia imposed a 0.27 percent wholesale tax on goods sold in the state. Local manufacturers were exempt from the wholesale tax but paid a 0.88 percent tax on goods manufactured in the state. The Supreme Court found that this scheme discriminated against interstate commerce.
The tax provides that two companies selling tangible property at wholesale in West Virginia will be treated differently depending on whether the taxpayer conducts manufacturing in the State or out of it. Thus, if the property was manufactured in the State, no tax on the sale is imposed. If the property was manufactured out of the State and imported for sale, a tax of 0.27% is imposed on the sale price.
Armco, 467 U.S. at 642, 104 S.Ct. at 2622. The fact that local manufacturers paid a higher tax rate on the manufacturing tax did not cure the discriminatory application of the wholesale tax. If the state where the goods were made also imposed a manufacturing tax, the out-of-state manufacturers would pay both a manufacturing and a wholesale tax while the local manufacturers would pay only *943 a manufacturing tax. Armco, 467 U.S. at 642-44, 104 S.Ct. at 2622-23.
The "internal consistency" test:
Rejecting the suggestion that the out-of-state manufacturers were required to prove a discriminatory impact, the Armco Court extended its application of the "internal consistency" test to claims of discrimination. "[A] tax must have `what might be called internal consistencythat is the [tax] must be such that, if applied by every jurisdiction,' there would be no impermissible interference with free trade." Armco, 467 U.S. at 644, 104 S.Ct. at 2623, (citing Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983)). The West Virginia tax system was not internally consistent because liability for the wholesale tax was dependent upon where the goods were manufactured.
The 1985 one-way credit scheme:
Following Armco, numerous firms sought relief from Washington B & O taxes that they had already paid on grounds that the MAE discriminated against interstate commerce. In anticipation of the possible invalidation of the MAE under Armco, the 1985 Legislature amended the MAE to provide a credit against the manufacturing tax for wholesale taxes paid to another state. Final Legislative Report, 49th Sess., SSB 3678, at 303-04 (1985). This one-way credit scheme was to apply (1) only if a court found that the existing MAE discriminated against interstate commerce, and (2) only to tax reporting periods for which relief was found to be appropriate. Laws of 1985, ch. 190, § 1; RCW 82.04.440(4) (1985).
The modified MAE created a B & O tax system that satisfies the internal consistency test. That is, if every jurisdiction taxed both wholesale activity and manufacturing but also provided a credit against the manufacturing tax for wholesale taxes paid to any state, then every state would collect a wholesale tax and all manufacturers would be exempt from manufacturing taxes. The resulting tax burden would not depend upon whether the taxed goods were sold locally or across state lines. Consequently, the MAE, as modified by the 1985 one-way credit scheme, does not discriminate against interstate commerce.
Tyler Pipe:
Following Armco, numerous taxpayers demanded relief from their B & O tax liability. We initially rejected the argument that the MAE was discriminatory. National Can Corp. v. Department of Revenue, 105 Wash.2d 327, 732 P.2d 134 (1986) (National Can I). Taxpayers appealed. The Supreme Court held that the MAE, as it existed before the 1985 amendments, was invalid "because it places a tax burden upon manufacturers in Washington engaged in interstate commerce from which local manufacturers selling locally are exempt." Tyler Pipe, 483 U.S. at 253, 107 S.Ct. at 2823. Tyler Pipe left this court to decide the necessary remedial issues on remand. Id.
Consistent with its limited holding, Tyler Pipe did not analyze the 1985 one-way credit scheme remedy. The opinion nevertheless indicates that the 1985 Legislature's understanding of the necessary remedy was correct. In defense of the existing MAE, the State argued that the manufacturing tax was similar to a use tax which the Supreme Court had previously upheld. The use tax exempted goods on which sales tax had already been paid in any state, not just in Washington. Tyler Pipe, 483 U.S. at 245, 107 S.Ct. at 2818-19 (citing Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937)). Observing the significant distinction between the use tax and the Washington manufacturing tax, the Supreme Court rejected the State's argument.
The parallel condition precedent for a valid multiple activities exemption eliminating exposure to the burden of a multiple tax on manufacturing and wholesaling would provide a credit against Washington tax liability for wholesale taxes paid by local manufacturers to any State, not just Washington.

Tyler Pipe, 483 U.S. at 246, 107 S.Ct. at 2819 (emphasis added). The credit against Washington manufacturing taxes for wholesale taxes paid to any state created a nondiscriminatory scheme which was constitutional under *944 Silas Mason Co. This part of the Tyler Pipe opinion confirms the determination that the 1985 one-way credit scheme cured the discriminatory effect of the old MAE.
Remedies under Tyler Pipe:
Although the Supreme Court limited its holding to a determination that the old MAE discriminated against Washington manufacturers who sold their products outside the state, and expressly reserved all remedial issues for consideration by this court on remand, the Tyler Pipe opinion nevertheless speculated about possible remedies.
Compliance with our holding on the discrimination issue, however, would not necessarily preclude the continued assessment of a wholesaling tax. Either a repeal of the manufacturing tax or an expansion of the multiple activities exemption to provide out-of-state manufacturers with a credit for manufacturing taxes paid to other States would presumably cure the discrimination.
Tyler Pipe, 483 U.S. at 248-49, 107 S.Ct. at 2820-21 (emphasis added). It is difficult to discern what the Court meant by this comment. The suggestion that a credit for out-of-state manufacturing taxes is needed to cure the MAE flatly contradicts the passage quoted earlier which indicates that only a credit for out-of-state wholesale taxes is required.
Tyler Pipe never actually explained how the Washington wholesale tax discriminates against interstate commerce. Since 1950, the wholesale tax has been uniformly applied to both in-state and out-of-state manufacturers. That tax was levied on Washington sales without regard to where the goods were manufactured and therefore did not discriminate against interstate commerce. We had previously held that out-of-state manufacturers who pay only Washington wholesale taxes cannot complain of the discriminatory effect of the MAE. B.F. Goodrich Co. v. State, 38 Wash.2d 663, 668, 231 P.2d 325, cert. denied, 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 659 (1951).[2]
Furthermore, the application of the Supreme Court's suggestion creates a tax scheme which violates the internal consistency test. Under such a system, Washington would tax both wholesaling and manufacturing but would provide (1) a credit against the manufacturing tax for wholesale taxes paid in Washington (the MAE) and (2) a credit against the wholesale tax for "manufacturing taxes paid to other States" (the suggestion above). If every state adopted such a system, locally manufactured goods sold in-state would be subject to only the wholesale tax. In contrast, goods sold in interstate commerce would be subject to only the manufacturing tax in the state where they were made.
Fortunately, the Supreme Court's reservation of all remedial issues for resolution by this court made this erroneous suggestion dicta. See National Can II, 109 Wash.2d at 889, 749 P.2d 1286. We have never actually held that out-of-state manufacturers are entitled to relief under Tyler Pipe or that a credit for out-of-state manufacturing taxes is necessary. Our consideration of these issues was quickly overtaken by events.
The 1987 two-way credit scheme:
Less than a month after the Supreme Court's Tyler Pipe decision, the 1987 Legislature further modified the MAE. Based on the unfortunate reference to a credit for out-of-state manufacturers, the Legislature concluded that "[l]anguage in the [Tyler Pipe] decision suggests the one-way credit may not be a sufficient remedy." Final Legislative Report, 50th Sess., SB 6078, at 115 (1987). This language convinced the 1987 Legislature that it was required to further amend the MAE. See American Nat'l Can Corp. v. Department of Revenue, 114 Wash.2d 236, 787 P.2d 545, cert. denied, 498 U.S. 880, 111 S.Ct. 213, 112 L.Ed.2d 173 (1990) (National Can III). The Legislature quickly passed *945 new amendments to the MAE which provided a credit against wholesale taxes for manufacturing taxes paid to any state.[3] Laws of 1987, 2d Ex.Sess., ch. 3, § 2; RCW 82.04.440(2) (1987).
This two-way credit scheme applies prospectively from the effective date of the amendment, August 11, 1987. Like the 1985 one-way credit scheme, it applies retroactively only to the extent that a court has determined that a taxpayer is entitled to relief from the existing MAE. Laws of 1987, 2d Ex.Sess., ch. 3, § 3; RCW 82.04.440 (1987). On remand from Tyler Pipe, we did not consider the effect of either the 1985 or 1987 amendments to the MAE because we held that Tyler Pipe only applied prospectively. National Can II, 109 Wash.2d at 895, 749 P.2d 1286.[4]
The present case:
Tyler Pipe held that the MAE discriminated against Washington manufacturers who sold their products outside the state. 483 U.S. at 253, 107 S.Ct. at 2823. Our determination in B.F. Goodrich Co. that out-of-state manufacturers cannot complain of the discriminatory effect of the MAE has not been reversed.[5] Nevertheless, Digital asserts that it is entitled to a refund for the wholesale taxes it has already paid. We can easily dispose of that claim on its merits.[6]
Assuming, arguendo, that Digital has a valid discrimination claim, the first issue is whether retroactive application of Tyler Pipe in turn triggers the retroactive application of the 1987 two-way credit scheme. The unfortunate dicta in Tyler Pipe has given rise to an almost universal assumption that the 1987 two-way credit scheme is necessary to cure the discrimination created by the old MAE.[7]
*946 A careful analysis reveals that this assumption is incorrect.
By its own terms, the 1987 scheme applies retroactively only if the MAE "as it existed before August 11, 1987" is invalidated by a court. Laws of 1987, 2d Ex.Sess., ch. 3, § 3; RCW 82.04.440 (1987). The MAE "as it existed before August 11, 1987" includes the potential retroactive application of the one-way credit scheme created by the 1985 amendments to RCW 82.04.440. As noted earlier, Tyler Pipe invalidated the oldest version of the MAE, not the version of the MAE which included the 1985 one-way credit scheme. See Tyler Pipe, 483 U.S. at 237 n. 8, 107 S.Ct. at 2814 n. 8.
The retroactive application of Tyler Pipe's invalidation of the pre-1985 MAE triggers the retroactive application of the 1985 one-way credit scheme. RCW 82.04.440(4)(a) (1985). The question then becomes whether that version of the MAE is constitutional. As the 1985 Legislature anticipated, that version of the MAE does not discriminate against interstate commerce. Tyler Pipe does not hold otherwise. In the absence of any final court decision holding that the 1985 one-way credit scheme is discriminatory, the retroactive application of the 1987 scheme is not triggered. Consequently, the 1985 one-way credit scheme applies retroactively to all tax periods before August 11, 1987.[8]
Due Process:
The determination that the MAE, as amended by the 1985 one-way credit scheme, does not discriminate against interstate commerce is not the end of the inquiry. Digital was still taxed under the old version of the B & O tax system. Therefore, we must determine whether the retroactive application of the 1985 one-way credit scheme is a constitutionally adequate remedy as applied to Digital. Although Digital challenges the 1987 scheme, the issue is actually whether the 1985 one-way credit scheme satisfies due process.
Due process requires that a state provide a "clear and certain remedy" from the burden of unconstitutional taxes. McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Dep't of Business Regulation, 496 U.S. 18, 39, 110 S.Ct. 2238, 2251, 110 L.Ed.2d 17 (1990) (citing Atchison, Topeka & Santa Fe Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436 (1912)). Where a tax is unconstitutional in its entirety, such as where the tax is beyond the state's power to impose, a state may have no alternative but to refund the unlawfully collected taxes. However, where a tax is unconstitutional only to the extent that it discriminates against interstate commerce, the state enjoys flexibility in curing the defect. McKesson, 496 U.S. at 39-40, 110 S.Ct. at 2251-52.
[T]he State's duty under the Due Process Clause to provide a `clear and certain remedy' requires it to ensure that the tax as actually imposed on petitioner and its competitors during the contested tax period does not deprive petitioner of tax moneys in a manner that discriminates against interstate commerce.
McKesson, 496 U.S. at 43, 110 S.Ct. at 2254.
The retroactive application of the 1985 one-way tax credit scheme creates a non-discriminatory B & O tax scheme. The wholesale tax credit against manufacturing taxes is available without regard to whether the goods are sold locally or out of state. The wholesale tax is levied on all goods sold in Washington without regard to where they were manufactured. Although some Washington manufacturers may be entitled to relief under the one-way credit scheme, the wholesale taxes actually imposed on out-of-state manufacturers, like Digital, are nondiscriminatory as applied. As a result, Digital is not entitled to any relief from those taxes.
Conclusion:
I would hold that (1) Tyler Pipe applies retroactively, (2) the 1985 one-way credit scheme applies to all tax periods before August *947 11, 1987, and (3) this remedy satisfies due process. I would disapprove the incorrect assumptions made in National Can II and National Can III to the extent that they are inconsistent with this analysis.
ALEXANDER, J., concurs.
GUY, Justice, dissenting.
I dissent on the retroactivity issue. The line of federal cases announcing the new rule of law on retroactivity does not apply to reopen Tyler Pipe Indus., Inc. v. Department of Revenue, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), for two reasons. First, a new rule of federal law does not apply to cases that are already closed when the rule is announced. Second, the nature of the remand from the Supreme Court in Tyler Pipe does not give rise to application of the new rule of automatic retroactivity announced in James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).
The majority opinion effectively reopens a case which was final and closed almost a decade ago. The issue of the retroactivity of the Tyler Pipe decision was decided by this court in National Can Corp. v. Department of Revenue, 109 Wash.2d 878, 749 P.2d 1286, cert. denied, 486 U.S. 1040, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988), under the then existing law. The parties to that case sought review in the United States Supreme Court and that review was denied. The law is settled on the issue; the decision of Tyler Pipe is given prospective only application. If the United States Supreme Court were deciding the Tyler Pipe case today, it probably would apply its new rule of commerce clause law to the litigants before it and thereby mandate retroactive effect be given its decision. If this court were deciding National Can today and if the Supreme Court had applied the new rule to the litigants, we would give the new rule of law retroactive effect. However, those cases are not being decided today; they were final eight years ago. Tyler Pipe and the remand to this court, National Can, were decided in 1987 and 1988, respectively, and the law in effect at that time was applied by the Supreme Court and by this court and that case is closed. The majority opinion reopens that case, which is in direct conflict with law announced by the Supreme Court.
The new rule on retroactivity announced in Beam Distilling in 1991 does not apply to the present case because the present litigants are asking us to reach back in time and apply a new rule of federal law to a case which was decided before the new rule of law was announced. The Supreme Court has clearly explained that new legal principles, even when applied retroactively, do not apply to cases already closed. Reynoldsville Casket Co. v. Hyde, ___ U.S. ____, ____, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820 (1995).[1] The Tyler Pipe case has been closed since 1988 when the Supreme Court denied review of our decision in National Can. Therefore, the new federal rule on retroactivity announced in 1991 in Beam Distilling does not apply to the National Can decision.
It is illogical that the Supreme Court would remand to this court to allow us to decide how to apply its holding, deny certiorari on our decision applying the decision prospectively, and now mandate the case be applied in a contrary fashion to parties not even before the court in that controversy. I think the majority misreads the decision in Tyler Pipe when it finds the Supreme Court in that case did not leave open the issue of retroactivity, and it ignores the rule that new legal principles do not apply to cases already closed.
A history of the cases and facts involved shows that the Supreme Court did allow this court to make the retroactivity decision after its holding in Tyler Pipe, and that its newer rules of retroactivity do not apply under the facts of this case.
In 1987, the United States Supreme Court declared unconstitutional a part of Washington state's B & O tax law and remanded to this court to decide if the decision should be applied retroactively or prospectively. The *948 Supreme Court cited us to Chevron Oil[2], indicating that it contained the "factors to consider in deciding whether to impose [the] decision prospectively only."[3]Tyler Pipe, 483 U.S. at 251-53, 107 S.Ct. 2810. We applied the Chevron Oil factors and held that the decision invalidating the state tax should be applied prospectively only. The Supreme Court denied review of that decision. National Can Corp. v. Department of Revenue, 109 Wash.2d 878, 749 P.2d 1286, appeal dismissed and cert. denied, 486 U.S. 1040, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988). As a result, the litigant taxpayers in the Tyler Pipe case did not receive the benefit of the new rule with regard to taxes paid before the date of the Tyler Pipe decision. National Can, 109 Wash.2d at 895, 749 P.2d 1286. In other words, the case was not given retroactive effect as to the litigant taxpayers or any other similarly situated taxpayers.
In Beam Distilling, the Supreme Court announced a new rule of law and retreated from its former Chevron Oil rule, holding that it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. It is important to recognize that the Beam Distilling Court held only that when it applied a new rule to the parties then before the Court, that rule should then be applied to all others not barred by res judicata or procedural requirements. Beam Distilling, 501 U.S. at 544, 111 S.Ct. at 2448.[4] Similarly, in Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 87-90, 113 S.Ct. 2510, 2513, 125 L.Ed.2d 74 (1993), the Court reiterated that the "Court's application of a rule of federal law to the parties before [it] requires every court to give retroactive effect to that decision." The Court held that a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law. Harper, 509 U.S. at 95-97, 113 S.Ct. at 2517; see also Reynoldsville Casket, ___ U.S. at ____, 115 S.Ct. at 1748.
The point is that in Tyler Pipe (the case announcing the new rule at issue here) the Supreme Court did not apply the rule to the litigants before it. It left open the issue of retroactivity for this court to decide. It did not, as the majority suggests, simply remand for a remedy; it also remanded for the determination of retroactivity. We decided that question under the then applicable law. The Supreme Court declined review and the case was closed. Nothing in Beam Distilling or Harper changes our decision. In the Beam *949 Distilling and Harper decisions, the Court concluded that when it did not reserve the question whether its holding should be applied to the parties before it, the normal rule of retroactive application will be followed. Beam Distilling, 501 U.S. at 539, 111 S.Ct. at 2445; Harper, 509 U.S. at 97-99, 113 S.Ct. at 2518. However, in Tyler Pipe the issue was reserved. The Supreme Court did not apply the rule to the parties before it; rather, it remanded to this court for the determination of retroactivity. It did not therefore mandate retroactive effect be given to that decision which decided a new rule of constitutional law. See National Can, 109 Wash.2d at 882-88, 749 P.2d 1286.
The majority opinion results in a strange and unfair result. The parties that bore the cost and burden of litigating the constitutionality of the tax in the Tyler Pipe case did not receive tax refunds because the new rule (invalidating the tax) was only applied prospectively. However, the majority would now give retroactive application of this very same decision to taxpayers who were not involved in that litigation. This results in the very unfairness that the Supreme Court decried in Beam Distilling;[5] that is, that the new rule applied to the litigants but not to others similarly situated. Here the majority decision results in an even greater injustice because those that successfully litigated the issue in Tyler Pipe were denied the retroactive application of the new rule to past events while those unrelated to the case now receive retroactive application of the new rule to taxes they paid before the date the tax was declared unconstitutional. In Beam Distilling, the Court explained that principles of equality and stare decisis dictate that "similarly situated litigants should be treated the same," and therefore a new rule cannot be applied retroactively to some litigants when it is not applied retroactively to others. Beam Distilling, 501 U.S. at 540, 542-43, 111 S.Ct. at 2447-48 (Souter, J.).
I would hold that the Tyler Pipe decision has always had, and still does have, only prospective application. Because the Supreme Court did not apply the new rule of law to the litigants before it in that case, no law requires it be given retroactive effect as to others who were not before the Court. Additionally, I would apply the federal law which holds that new rules of federal law do not apply to cases which are otherwise final. Any other rule could play havoc with cases wherein new rules of law were applied only to cases not yet final.
I would affirm the trial court.
MADSEN, J., and PEKELIS, J. Pro Tem., and TALMADGE, J., concur.
NOTES
[1] 109 Wash.2d 878, 749 P.2d 1286, cert. denied, 486 U.S. 1040, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988).
[2] 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987).
[3] Digital originally requested an award of attorney fees under 42 U.S.C. §§ 1983 and 1988, but later withdrew the request. See Appellant's Reply Br. at 25.
[4] See Tyler Pipe Indus. v. Department of Rev., 105 Wash.2d 318, 715 P.2d 123 (1986) and National Can Corp. v. Department of Rev., 105 Wash.2d 327, 732 P.2d 134 (1986).
[5] Tyler Pipe Indus. v. Department of Rev., 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987).
[6] Tyler Pipe, 483 U.S. at 253, 107 S.Ct. at 2823.
[7] National Can Corp. v. Department of Rev., 109 Wash.2d 878, 895, 749 P.2d 1286, cert. denied, 486 U.S. 1040, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988).
[8] Although the constitutionality of the 1987 credit law is not at issue in this appeal, we have determined the new law meets constitutional requirements. See American Nat'l Can v. Department of Rev., 114 Wash.2d 236, 248-53, 787 P.2d 545 (holding that the 1987 amendment to the B & O tax credit law satisfies the requirements of the equal protection, due process and commerce clauses), cert. denied, 498 U.S. 880, 111 S.Ct. 213, 112 L.Ed.2d 173 (1990).
[9] Laws of 1987, 2d Ex.Sess., ch. 3, § 3; RCW 82.04.440.
[10] Laws of 1987, 2d Ex.Sess., ch. 3, § 5.
[11] See id. at § 3; see also American Nat'l Can, 114 Wash.2d at 250-53, 787 P.2d 545.
[12] Laws of 1987, 2d Ex.Sess., ch. 3, § 3 ("[R]elief [to] be limited to the granting of such credits"); American Nat'l Can, 114 Wash.2d at 253, 787 P.2d 545 ("[T]he 1987 credit law limits relief to the granting of credits.").
[13] See Clerk's Papers at 4-5.
[14] See id. at 11-12.
[15] See id. at 12 and n. 3.
[16] See id. at 41-43.
[17] See id. at 70.
[18] See id. at 174-77.
[19] See id. at 178.
[20] See id. at 233-37.
[21] See id. at 174-77.
[22] See id. at 238-44.
[23] See, e.g., Br. of Appellant at 3-7.
[24] Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).
[25] Chevron Oil, 404 U.S. at 106-07, 92 S.Ct. at 355-56; National Can II, 109 Wash.2d at 881, 749 P.2d 1286.
[26] See National Can II, 109 Wash.2d at 895, 749 P.2d 1286.
[27] See Robinson v. City of Seattle, 119 Wash.2d 34, 830 P.2d 318 (1992).
[28] Beam Distilling Co. v. Georgia, 501 U.S. 529, 532-34, 111 S.Ct. 2439, 2442, 115 L.Ed.2d 481 (1991), cert. denied, ___ U.S. ____, 115 S.Ct. 662, 130 L.Ed.2d 597 (1994).
[29] See Bacchus Imports v. Dias, 468 U.S. 263, 273, 104 S.Ct. 3049, 3056, 82 L.Ed.2d 200 (1984) (the court struck down Hawaii tax statute favoring locally produced alcoholic beverages as a violation of the Commerce Clause).
[30] Beam, 501 U.S. at 532-34, 111 S.Ct. at 2442.
[31] Id.
[32] Id. at 538-40, 111 S.Ct. at 2445.
[33] Id. at 540, 111 S.Ct. at 2446.
[34] Id. at 538-40, 111 S.Ct. at 2445.
[35] Id.
[36] Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).
[37] Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 817, 109 S.Ct. 1500, 1508-09, 103 L.Ed.2d 891 (1989).
[38] Harper, 509 U.S. at 90-91, 113 S.Ct. at 2513-14, 125 L.Ed.2d at 82.
[39] Id.
[40] Id.
[41] Id. at 91-93, 113 S.Ct. at 2514-15, 125 L.Ed.2d at 83.
[42] Id.
[43] Id. at 97, 113 S.Ct. at 2517, 125 L.Ed.2d at 86 (quoting Beam, 501 U.S. at 549-51, 111 S.Ct. at 2451.)
[44] Id.
[45] Id. at 97-98, 113 S.Ct. at 2518, 125 L.Ed.2d at 86-87 (quoting Beam, 501 U.S. at 539, 111 S.Ct. at 2445.)
[46] Id. at 97-99, 113 S.Ct. at 2518, 125 L.Ed.2d at 87.
[47] Id.
[48] Id. at 99-100, 113 S.Ct. at 2518-19, 125 L.Ed.2d at 88.
[49] Harper, 509 U.S. at 96-99, 113 S.Ct. at 2517-18, 125 L.Ed.2d at 86-87; Beam, 501 U.S. at 537-40, 111 S.Ct. at 2445; Robinson, 119 Wash.2d at 76, 830 P.2d 318.
[50] Harper, 509 U.S. at 97-99, 113 S.Ct. at 2518, 125 L.Ed.2d at 87; Beam, 501 U.S. at 538-40, 111 S.Ct. at 2445.
[51] See Beam, 501 U.S. at 541, 111 S.Ct. at 2446 ("[R]etroactivity in civil cases must be limited by the need for finality, ...; once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed.").
[52] Id. at 541-43, 111 S.Ct. at 2447; Robinson, at 75, 830 P.2d 318 (quoting Beam).
[53] See Beam, 501 U.S. at 534-36, 111 S.Ct. at 2443 (noting that the practice of retroactive application is overwhelmingly the norm); Robinson, 119 Wash.2d at 79, 830 P.2d 318 (same) (quoting Beam).
[54] See Miller v. Santa Cruz Cy., 39 F.3d 1030, 1035 (9th Cir.1994) (holding that Harper, not Chevron Oil, is now the controlling rule) cert. denied, ___ U.S. ____, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). United States v. 20832 Big Rock Drive, 51 F.3d 1402, 1405-06 (9th Cir.1995) (same).
[55] The Court in Beam cited American Trucking Ass'n, Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 266 (1987) as an example of reserving the issue of retroactivity to a state court. Beam, 501 U.S. at 537-40, 111 S.Ct. at 2445. In American Trucking, the Court remanded a case to the Pennsylvania Supreme Court for consideration of whether the Court's ruling on constitutionality "should be applied retroactively and to decide other remedial issues." American Trucking, 483 U.S. 297-98, 107 S.Ct. at 2847-48.
[56] See Tyler Pipe, 483 U.S. at 253, 107 S.Ct. at 2823; see also American Nat'l Can, 114 Wash.2d at 240, 787 P.2d 545.
[57] See, e.g., Appellant's Reply Br. at 16.
[58] American Nat'l Can, 114 Wash.2d at 251, 787 P.2d 545.
[59] See, e.g., Appellant's Br. at 26-33.
[60] Harper, 509 U.S. at 99-100, 113 S.Ct. at 2518-19, 125 L.Ed.2d at 88.
[61] Id. at 100, 113 S.Ct. at 2519, 125 L.Ed.2d at 88-89 (quoting McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 39-40, 110 S.Ct. 2238, 2252, 110 L.Ed.2d 17 (1990)).
[62] Id. at 101, 113 S.Ct. at 2519, 125 L.Ed.2d at 89 (quoting McKesson, 496 U.S. at 38, 110 S.Ct. at 2251).
[63] Id. (quoting McKesson, 496 U.S. at 31, 110 S.Ct. at 2247).
[64] Id. (quoting McKesson, 496 U.S. at 40, 110 S.Ct. at 2252).
[65] McKesson, 496 U.S. at 40, 110 S.Ct. at 2252.
[66] Id.
[67] Digital argues that "retroactive application of the 1987 credit law will do nothing to change the fact that Digital paid the unconstitutional B & O tax while its competitors did not." Appellant's Reply Br. at 17. Digital also complains that it must apply for credits to equalize the tax disparity between it and manufacturers benefited under the unconstitutional exemption, while no such requirement is placed on the benefited manufacturers. Id. at 17 n. 9. But Digital does not explain how either of these two facts leads to the conclusion that retroactive application of the 1987 credit law violates its rights under the Due Process Clause.
[68] Appellant's Br. at 30 (citing McKesson, 496 U.S. at 40-41, 110 S.Ct. at 2252-53).
[69] See, e.g., McKesson, 496 U.S. at 39-40, 110 S.Ct. at 2252 ("a [s]tate found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination"); Associated Indus. v. Lohman, ___ U.S. ____, 114 S.Ct. 1815, 1825, 128 L.Ed.2d 639 (1994) (same); Harper, 509 U.S. at 100-02, 113 S.Ct. at 2519-20, 125 L.Ed.2d at 89 (noting that in crafting an appropriate remedy, a state is free to choose which form of relief it will provide, so long as it satisfies the minimum federal requirements of due process).
[70] See RCW 82.04.440(4).
[71] Clerk's Papers at 48 (emphasis added).
[72] See Resp't's Br. at 12.
[73] See American Nat'l Can, 114 Wash.2d at 240-51, 787 P.2d 545 (holding that the 1987 credit law applies to the interim period of June 23, 1987 to August 11, 1987).
[74] See Resp't's Br. at 12.
[75] Laws of 1987, 2d Ex.Sess., ch. 3, § 3; RCW 82.04.440 (historical and statutory notes).
[1] Under James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 540-41, 111 S.Ct. 2439, 2446, 115 L.Ed.2d 481 (1991), full retroactive application of a new rule of law is the norm, and it is error for a court to refuse to retroactively apply a rule of law after the case announcing the rule has already done so. The majority and the dissent assume that the issue is, therefore, whether the Supreme Court applied Tyler Pipe to the parties before it. The majority finds that Tyler Pipe did not reserve the issue of retroactivity and therefore applies retroactively. The dissent suggests that the Supreme Court left the issue of retroactivity to this court.

The proper formulation of the retroactivity issue here, however, is whether this court, in National Can II, should have retroactively applied Armco Inc. v. Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984) (the case which invalidated a similar West Virginia tax scheme). See Tyler Pipe, 483 U.S. at 251-52, 107 S.Ct. at 2821-23. Notwithstanding our efforts in National Can Corp. v. Department of Revenue, 105 Wash.2d 327, 732 P.2d 134 (1986) (National Can I) to distinguish Armco, that case in fact required the partial invalidation of the Washington business and occupation (B & O) tax scheme. The relevant new rule of law was Armco, not Tyler Pipe.
Armco did not reserve the issue of retroactivity and can, therefore, be understood to apply retroactively. Because the Supreme Court applied Armco retroactively, it was error, under Beam, for this court to not follow suit in National Can II.
[2] Tyler Pipe discussed, but did not overrule, this case. 483 U.S. at 236 n. 7, 237 n. 9, 107 S.Ct. at 2814 n. 7, 9.
[3] Tyler Pipe suggested a credit for out-of-state manufacturing taxes. 483 U.S. at 249, 107 S.Ct. at 2820-21. The two-way credit scheme appears to provide a credit for all manufacturing taxes, including those paid in Washington. RCW 82.04.440(2), (5)(c) (1987).
[4] The new B & O tax system was challenged again in American Nat'l Can Corp. v. Department of Revenue, 114 Wash.2d 236, 787 P.2d 545 (1990), cert. denied, 498 U.S. 880, 111 S.Ct. 213, 112 L.Ed.2d 173 (1990) (National Can III). In that case, we upheld the prospective application of the 1987 two-way credit scheme against new discrimination claims. We reversed the trial court's determination that taxpayers were entitled to a refund for B & O taxes paid during the "interim period" between the decision in Tyler Pipe (June 23, 1987) and the effective date of the 1987 amendments (August 11, 1987). Both holdings were based on the parties' concessions and assumptions that the 1987 two-way credit scheme remedied the discrimination identified in Tyler Pipe. National Can III, 114 Wash.2d at 242, 244, 249, 250, 787 P.2d 545. We also accepted the State's concession that taxpayers were entitled to the two-way credit remedy during the interim period. National Can III, 114 Wash.2d at 249, 787 P.2d 545.
[5] See n. 2 infra.
[6] The majority suggests that this case became academic after it was determined that Digital had not been double taxed, i.e., paid any out-of-state manufacturing taxes in addition to its Washington wholesale taxes on the same goods. Majority at 940-941. This observation implies that such double taxation is a necessary or sufficient element of a discrimination claim. Neither is the case.

The application of two states' differing tax schemes may expose interstate commerce to double taxation without discriminating against such commerce.
It is true, as the State of Washington appearing as amicus curiae points out, that Armco would be faced with the same situation that it complains of here if Ohio (or some other State) imposed a tax only upon manufacturing, while West Virginia imposed a tax only upon wholesaling. In that situation, Armco would bear two taxes, while West Virginia sellers would bear only one. But such a result would not arise from impermissible discrimination against interstate commerce but from fair encouragement of in-state business.
Armco Inc., 467 U.S. at 645, 104 S.Ct. at 2624.
Conversely, a tax scheme which does not result in double tax liability may be discriminatory. Relief from the West Virginia wholesale tax did not require the out-of-state manufacturers to establish that they actually paid any out-of-state manufacturing taxes. Armco Inc., 467 U.S. at 644, 104 S.Ct. at 2623. Likewise, Washington manufacturers who sell their products outside this State need not show that they actually paid out-of-state wholesale taxes. The remedy in such cases may be limited to an expansion of the tax exemption to provide a credit for similar out-of-state taxes (which may not benefit taxpayers who were not double taxed). But until some remedy is provided and the tax scheme is rendered non-discriminatory as applied, the absence of double taxation does not establish that a taxpayer has not suffered discrimination.
[7] Relying on National Can III, the majority assumes that the retroactive invalidation of the MAE brings the 1987 two-way credit scheme into operation. Majority at 938.
[8] The assumption in National Can III that the 1987 scheme applies to the interim period appears to be incorrect. However, that assumption was based on the State's concession that it applied. See n. 4 infra. The State makes the same concession here. Br. of Resp't at 10.
[1] See also Beam Distilling, 501 U.S. at 541, 111 S.Ct. at 2446-47 (retroactivity in civil cases must be limited by the need for finality and a new rule "cannot reopen the door already closed.")
[2] Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).
[3] The Supreme Court in Tyler Pipe stated as follows:

The [Washington] Department of Revenue argues that any adverse decision in these cases should not be applied retroactively because the taxes at issue were assessed prior to our opinion in Armco and the holding in that case was not clearly foreshadowed by earlier opinions. See Chevron Oil Co. v. Huson, 404 U.S. 97, 106-107 [92 S.Ct. 349, 355-356, 30 L.Ed.2d 296] (1971) (factors to consider in deciding whether to impose decision prospectively only). The State's argument is similar to an argument advanced by the State of Hawaii in Bacchus Imports, Ltd. v. Dias, 468 U.S., at 276-277 [104 S.Ct. at 3057-3058]. The State urged that, if we invalidated the tax at issue, we should not require the payment of refunds to taxpayers. We did not resolve the merits of that issue, concluding that this Court should not take it upon itself in this complex area of state tax structures to determine how to apply its holding[.]
Tyler Pipe, 483 U.S. at 251-52, 107 S.Ct. at 2822 (emphasis added).
The Court concluded that "it is likewise appropriate for the Supreme Court of Washington to address in the first instance the refund issues raised by our rulings in these cases." Tyler Pipe, 483 U.S. at 253, 107 S.Ct. at 2823.
We understood that on remand this court was to decide the issue of retroactivity. National Can, 109 Wash.2d at 881, 749 P.2d 1286. We decided refunds were not available to the parties before the court for taxes collected before the date of the Supreme Court's decision because the case should be given pure prospective application. National Can, 109 Wash.2d at 895, 749 P.2d 1286.
[4] The Supreme Court stated:

The grounds for our decision today are narrow. They are confined entirely to an issue of choice of law: when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata. We do not speculate as to the bounds or propriety of pure prospectivity.
Beam Distilling, 501 U.S. at 544, 111 S.Ct. at 2448 (Souter, J.).
[5] We understood this issue in Robinson v. City of Seattle, 119 Wash.2d 34, 77, 830 P.2d 318 (1992). We explained that

under Beam Distilling, retroactive application of a principle in a case announcing a new rule precludes prospective application of the rule in any subsequently raised suit based upon the new rule. Such selective, or "modified", prospectivity would be unequal and unmindful of stare decisis as it treats similarly situated litigants unequally.